552 F.2d 305
 William T. ONG, M.D., Plaintiff-Appellee,
v.
James TOVEY, M.D., Surgery, Karl Urbach, M.D., Director,
U.S. Public Health Service Hospital, San Francisco,
California, Frederick Dykstra, Chief, Medical Education,
Frederick Burris, M.D., Assistant Chief, Surgery, James
Kauth, M.D., Assistant Chief, Surgery, James Goebel, M.D.,
Assistant Chief, Surgery and Chief, Urology, Caspar N.
Weinberger, Secretary, U.S. Dept. H.E.W., the Surgeon
General, Public Health Service, Individually and in their
official capacities, Defendants-Appellants.
 No. 76-1658.
 United States Court of Appeals,
Ninth Circuit.
 April 19, 1977.
 
 Richard F. Locke, Asst. U.S. Atty., San Francisco, Cal., argued, for defendants-appellants.
 John C. Brittain, San Francisco, Cal., Moore & Bell, Oakland, Cal., argued, for plaintiff-appellee; Harold E. McDermid, San Francisco, Cal., appeared.
 On Appeal from the United States District Court for the Northern District of California.
 Before KENNEDY and ANDERSON, Circuit Judges, and BURNS,* District Judge.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 This is an appeal by the Public Health Service (PHS) from a district court decision and permanent injunction which reinstated with back pay a surgical resident who had been terminated from the PHS Hospital's surgical residency program and later terminated from the Commissioned Corps of the PHS for being AWOL. We reverse the decision of the district court and dissolve the injunction. We do so under the authority of this court's recent decision in Stretten v. Wadsworth Veterans Hospital, 537 F.2d 361 (9th Cir. 1976). We emphasize that at the time the district court decided this case it did not have the benefit of the Stretten decision.
 
 
 2
 Briefly, the pertinent facts are these: Dr. Ong joined the PHS early in 1972 under a residency program specializing in general surgery. The program was to last four years. During his third year and the beginning of his fourth year, the doctors over him (defendants here) began to question his competence for the job. In September of 1974 Dr. Tovey (Chief of the Surgery Department) found Ong's work to be so unsatisfactory that he limited some of his operating privileges. On November 22, 1974, Dr. Tovey relieved Ong of his duties as a senior surgical resident and recommended that he resign from the residency program. He did not terminate Ong's commission with the PHS nor recommend that he resign from the Commissioned Corps. Ong was given several days off to consider other alternatives in the medical profession in the PHS.
 
 
 3
 On November 26, 1974, Dr. Ong met with Drs. Tovey, Kauth and Burris. Dr. Ong asked why they sought his resignation from the residency program, and the defendants discussed his shortcomings with him.
 
 
 4
 On January 17, 1975, Ong and his attorney met with Drs. Tovey, Burris, Kauth and Goebel for a question and answer period on Ong's status. The doctors all concurred that Ong should resign from the surgical residency program.
 
 
 5
 On January 20, 1975, Ong's attorney wrote to Dr. Tovey, saying that Ong would report back to work "as directed" but he wanted a hearing on the loss of operating privileges. By January 24 Ong still had not returned to work. His attorney wrote to the hospital demanding that he be given a hearing on his continued participation in the residency program.
 
 
 6
 On January 24, 1975, Ong was declared to be AWOL and notice was sent to him and his attorney. This notice was acknowledged. On February 4, 1975, Ong's attorney wrote and said that Ong would report to work only if he were reinstated with full operating rights. Dr. Urbach declined on public safety grounds. On April 4, 1975, Ong's commission with the Public Health Service was officially terminated for being AWOL more than 30 days.
 
 I.
 
 7
 CONSTITUTIONAL DUE PROCESS AND THE RIGHT TO A HEARING
 
 
 8
 Constitutional due process requires that a person be given a hearing when the government seeks to terminate that person's protected interests in either "liberty" or "property". Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Once it has been determined that a protected interest in liberty or property exists, then the question becomes what type of hearing will satisfy due process requirements. Stretten, supra.
 
 
 9
 The liberty interest is not infringed by a label of incompetence. Stretten, supra at 366. We do find, however, that there is a sufficient property interest in a surgical residency that entitles Dr. Ong to due process and a hearing. In Stretten, supra, we found that a doctor's claim to his residency was a "property interest deserving of appropriate due process before it is removed." 537 F.2d at 367.
 
 
 10
 When a protected property interest is involved, due process requires that the person be given "some kind of a hearing" before the property interest is taken away. Board of Regents v. Roth, supra. The type of hearing is not the same in all cases, however, and can vary from case to case. In a recent Supreme Court case on this subject, Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), the court observed that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. "Due process is flexible and calls for such procedural protections as the particular situation demands."
 
 
 11
 The court in Mathews then went on to state that the requirements of due process should be considered in light of three distinct factors. These three factors are:
 
 
 12
 1. The private interest that will be affected by the official action;
 
 
 13
 2. The risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;
 
 
 14
 3. The government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 
 
 15
 The court in Stretten, supra, applied the analysis of Mathews to the termination of Stretten's residency and found that due process does not always require a full and formal adversary hearing. We agree and find that the rationale in Stretten, supra, applies and controls in the instant case.
 
 
 16
 In weighing the factors in Mathews we hold that the government's interest in protecting patients from medical incompetence outweighs the physician's private interest in greater income and higher position. In cases such as this where doctors work very closely together and the decision to terminate a resident is made based upon their personal observation, less rigid procedures are necessary to prevent an "erroneous deprivation" of the resident's property interest. In Stretten, supra, we said: ". . . a full adversary hearing is unlikely to be more useful than less elaborate procedures in revealing any flaws that would undermine the case against a terminated resident." 537 F.2d at 369. When the doctors in these situations express their professional opinion that a resident is incompetent, those opinions are unlikely to be shaken at a more formal hearing with trial-type cross-examination.
 
 
 17
 In the instant case, Dr. Ong argues that Stretten is factually distinguishable and inapplicable because Stretten was given written notice and Ong was not. This misses the mark. The court, in Stretten, did not specifically require that a resident be given written notice. In deciding what would satisfy the due process requirements for the termination of a residency, the court in Stretten said:
 
 
 18
 "The resident's interest is important enough that he should have notice of his deficiencies, should have opportunity to examine the evidence against him, and should be allowed to present his side of the story to the decision-maker." 537 F.2d at 369.
 
 
 19
 The record discloses that Dr. Ong was given "notice" of his deficiencies. The first notice came in September, 1974, when his operating privileges were limited. Further notice came on November 22, 1974, when Dr. Tovey terminated his surgical residency. On November 26, 1974, Dr. Ong met with Drs. Tovey, Kauth and Burris. He asked why he was being asked to resign from the residency program and defendants discussed his shortcomings with him. Surely, this placed him on "notice of his deficiencies."
 
 
 20
 On January 17, 1975, Dr. Ong and his attorney met with Drs. Tovey, Burris, Kauth and Goebel for a question and answer period. Dr. Tovey was essentially the decision-maker. The other doctors concurred in his decision that Dr. Ong was unfit to remain as a surgical resident.
 
 
 21
 While these meetings did not provide for a formal-type cross-examination, they did present Dr. Ong and his attorney with the opportunity to question the other doctors and the decision-makers about how they arrived at their decision to terminate Dr. Ong from his residency program.
 
 
 22
 We find that these meetings provided enough of a hearing to satisfy the due process requirements in cases such as these. Dr. Ong had notice of his deficiencies, he was able to examine the evidence against him (in this case the opinions of the other doctors) and was able to present his side of the story. We find that these meetings satisfy the Stretten standard that the decision-maker have enough data before him that his decision to terminate is not arbitrary, capricious or unfair. There is nothing to be gained by another hearing.
 
 
 23
 While we do not find that the procedures used by the PHS to terminate Dr. Ong's residency were the best possible, we do find that under Stretten they satisfied the basic requirements of constitutional due process.
 
 II.
 
 24
 TERMINATION OF DR. ONG'S COMMISSION FOR BEING AWOL
 
 
 25
 At the time Dr. Ong's residency was terminated, he still retained his officer's commission and would have been able to keep it had he not gone AWOL. Dr. Ong contends that "but for" the illegal termination of his residency, he would not have been declared AWOL. As discussed above, we have not found Dr. Ong's termination from the residency program to be "illegal." Nor do we find his termination from the Commissioned Corps to be improper.
 
 
 26
 Dr. Ong was given more than sufficient notice that he was AWOL and that he would be terminated if he did not return to work as both he and his attorney had agreed he would. When he refused to return to work, the PHS properly terminated him. See 42 CFR 21.269(1) and 42 CFR 21.270(b).
 
 
 27
 For the above reasons, we hold that Dr. Ong is not entitled to reinstatement by the PHS in any capacity. Nor is he entitled to any back pay. The permanent injunction is dissolved and the decision of the district court below is REVERSED
 
 
 
 *
 The Honorable James M. Burns, United States District Judge, District of Oregon, sitting by designation