Jane DOE, et al., Plaintiffs-Appellants,

v.

Seth STAPLES, et al.,
Defendants-Appellees.

No. 81–3549.

United States Court of Appeals,
Sixth Circuit.

May 17, 1982.

Decided May 6, 1983.

Rehearing Denied Sept. 14, 1983.

Contie, Circuit Judge, filed dissenting opinion.

Robert Newman, Legal Aid Society of Cincinnati, Michael O'Hara (argued), Cincinnati, Ohio, for plaintiffs-appellants.

James W. Harper, Asst. Pros. Atty., Cincinnati, Ohio, for defendants-appellees.

Before EDWARDS, Chief Judge, CONTIE, Circuit Judge, and HORTON, District Judge.[*]

HORTON, District Judge.

Jane Doe, the appellant in this class action, challenges the policies and practices of the defendant, Hamilton County Welfare Department (HCWD), Cincinnati, Ohio, which permit children in the temporary legal custody of HCWD to be summarily removed from the physical custody of their natural parents without prior written notice or an opportunity for a hearing. Further, appellant charges there were no legally enforceable standards limiting the discretion of HCWD employees in deciding under what circumstances these children, committed to the legal custody of the state, could be physically removed from the custody of their natural parents. Jane Doe argues that the failure to provide notice and a hearing and the absence of sufficient legal standards deprived her and similarly situated members of the class[1] of the right to family integrity without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

The United States District Court for the Southern District of Ohio declared HCWD's summary removal policies and practices unconstitutional, finding them to be in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States.

The district court ruled that summary removal of a child in the temporary legal custody of HCWD from his or her natural parents must be, as a general rule, preceded by written notice and a hearing, absent countervailing governmental interests. The court based its ruling upon three reasons:

1) Some kind of notice and hearing should precede the deprivation of a parent's liberty interest.

2) The Supreme Court has rejected the proposition that a wrong may be done if it can be undone.

3) There is psychological evidence that summary removal of a child from the natural parent is a threat to the development of the child.

In so ruling, the court recognized HCWD's interest in the child's welfare as temporary legal custodian of the child. For that reason, the court stated that HCWD could summarily remove a child, in HCWD's temporary legal custody, from the natural parents if it is necessary to protect the child from serious and imminent physical, psychological or emotional harm. However, if summary removal is necessary, the court said HCWD must deliver written notice to the parent at the time of removal and must

---

[*] The Honorable Odell Horton, United States District Judge, Western District of Tennessee, sitting by designation.

1. The certified class consists of families with children who have been temporarily committed to the custody of HCWD as dependent, neglected or unruly children and who have been reunited and returned to the physical custody of their natural parents.

hold a hearing within a reasonable period of time. The court finalized its ruling by stating that due process requires:

1) The plaintiffs be given notice prior to the removal of the child (at the time of the removal where exigent circumstances exist or promptly thereafter) stating the reasons for the removal;

2) The plaintiffs be given a full opportunity at the hearing to present witnesses and evidence on their behalf; and

3) The plaintiffs may have a retained attorney at the hearing.

However, the court reasoned that since judicial review of the removal hearing is available under Ohio law, Ohio Rev.Code Ann. §§ 2151.359 and 2506.01, procedures of a more formal nature could not be justified. The court declined to specify categorical standards necessary to determine when removal is appropriate. The court stated that it is only necessary that removal satisfy the general purpose of Chapter 2151 of the Ohio Revised Code.

The plaintiffs were apparently satisfied with the district court's well-reasoned opinion to the extent it held the policies and practices of HCWD which permit summary removal of committed children from the physical custody of their natural parents to be in violation of the due process clause of the fourteenth amendment and therefore unconstitutional. However, the plaintiffs appealed to this Court seeking a review of the district court's ruling on three points:

1) The lack of specificity in the removal standard;

2) The content of the notice HCWD must give to affected parents;

3) The limitations on procedural safeguards which attend the pre-removal hearing.

The facts in this case are not in dispute. Mary Doe is the natural mother of Jane Doe who was born on May 12, 1973. On April 8, 1976, Jane Doe was temporarily committed to the legal custody of HCWD pursuant to Ohio Rev.Code Ann. § 2151.-353.[2] This commitment was necessitated by Mary Doe's incarceration in the Ohio Reformatory for Women. Upon her release in December of 1976, Mary Doe was awarded physical custody of her daughter. However, temporary legal custody of the child remained with HCWD during all times relevant to this case. Jane Doe's placement with her natural mother continued with the acquiescence of HCWD until July 28, 1980, when an HCWD social worker removed Jane Doe from the physical custody of Mary Doe and placed her in a local shelter care facility. It is undisputed that no written notice of any kind was ever given to Mary Doe regarding the summary removal of her natural child. There was no hearing of any kind prior or subsequent to the summary removal. The social worker testified before the district court that information supplied over the telephone by three individuals provided the basis for the summary removal. The identities of the complaining parties were not disclosed to Mary Doe. The record reflects that it is the official policy of HCWD not to disclose the identities of persons who complain to it about parental misconduct. Nor will HCWD disclose the contents of its files which contain information bearing on the removal decision.

With respect to the issue of an applicable standard governing removal, the district court ruled that no specific standard is constitutionally mandated, only that the standard used by HCWD must satisfy the general purpose of Chapter 2151 of the Ohio Revised Code. The relevant portion of the Chapter 2151 purpose statement in Section 2151.01 reads:

The sections in Chapter 2151 of the Revised Code, with the exception of those sections providing for the criminal prosecution of adults, shall be liberally inter-

2. See full text of § 2151.353 in appendix.

preted and construed so as to effectuate the following purposes:

\* \* \* \* \* \*

(C) To achieve the foregoing purposes, whenever possible, in a family environment, separating the child from its parents only when *necessary for his welfare* or in the *interests of public safety;* (emphasis added).

Appellants urge that this broad standard, generally referring to the welfare of the child and interest of public safety, fails to satisfy the requirements of due process of law in that HCWD's failure to implement enforceable standards leaves HCWD with unfettered discretion in deciding which committed child is to be removed from the physical custody of the natural parent. Appellants argue the decision to remove a child necessarily becomes an entirely subjective decision which may vary from social worker to social worker and is not based on objective criteria. Appellants assert this subjectivity, inherent in the statute, permits the decision to be influenced by personality, temperament, experience and training of the individual worker. In other words, it is appellants' contention that a family's opportunity to retain physical custody of its child depends more on who the assigned social worker is rather than a family's ability to care for the child.

■ This Court finds that Ohio's welfare of the child/interests of public safety standard sufficiently satisfies due process requirements. When a statute is not concerned with criminal conduct or first amendment considerations, the court must be fairly lenient in evaluating a claim of vagueness. *Exxon Corp. v. Busbee,* 644 F.2d 1030 (5th Cir.1981), *cert. denied,* 454 U.S. 340, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981). As the court in *Exxon* stated:

[T]o constitute a deprivation of due process, it must be "so vague and indefinite as really to be no rule or standard at all." *A.B. Small Co.,* 267 U.S. [233] at 239, 45

S.Ct. [295] at 297 [69 L.Ed. 589] (1925). To paraphrase, uncertainty in this statute is not enough for it to be unconstitutionally vague; rather, it must be substantially incomprehensible.

644 F.2d at 1033. Whether a statute is unconstitutionally vague must be assessed in the context of the particular conduct to which it is being applied. *United States v. National Dairy Products Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). Under the particular circumstances involved in this case, the Court does not find the Ohio statute is "substantially incomprehensible," *Exxon, supra,* at 1033, or so indefinite that "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). *See also Hynes v. Mayor and Council of Borough of Oradell,* 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976).

The other concerns of appellants involve the content of the notice that HCWD must give to affected parents and the limitations on procedural safeguards which attend the pre-removal hearing.

■ Procedural due process applies only to the deprivation of constitutionally protected liberty or property interests. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Once the deprivation of a constitutionally protected liberty or property interest has been demonstrated, a court must determine whether a plaintiff was afforded adequate due process protection. "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

■ As the district court pointed out, it is axiomatic that a parent has a liberty interest in the freedom of personal choice in matters of family life in which the state cannot interfere. *Smith v. Organization of*

*Foster Families,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). This liberty interest in family integrity has been labeled an essential or fundamental interest. *Lassiter v. Department of Social Service of Durham County, North Carolina,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

The Supreme Court of the United States stated in *Smith* that the only hearing required by due process is one appropriate to the case. *Smith, supra* 431 U.S. at 848, 97 S.Ct. at 2111. The Court has also indicated due process cannot be concretely defined:

> [D]ue process is flexible and calls for such procedural protections as the particular situation demands. "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by government action."

*Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), quoting *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).

In this case, HCWD was granted temporary legal custody of Mary Doe's minor child when Mary Doe was incarcerated. As stated by the district court, the temporary legal custody of HCWD was subject to residual parental rights, privileges and responsibilities of the natural parent. The state's placement of the minor child, Jane Doe, with her natural parent at the end of the parent's period of incarceration began the process of reestablishing the emotional attachment of parent and child. Nevertheless, the state still maintained temporary legal custody of Jane Doe.

The district court stated this case was most analogous to *Morrissey.* That analogy is appropriate to ascertain the nature and

extent of Mary Doe's liberty interest and the procedural process necessary to protect such interest. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Board of Regents, supra.* Mary Doe's parental rights were limited when she was incarcerated. The State of Ohio granted Mary Doe the opportunity to remove this limit on her liberty interest when it allowed her to regain physical custody of her child. This potential of Mary Doe to regain both legal and physical custody of her natural child is not unlike the conditional liberty of a parolee "properly dependent on the observance of special parole restrictions." *Morrissey,* 408 U.S. at 480, 92 S.Ct. at 2599. Continued physical custody of the minor child was subject to the temporary legal custody of HCWD. The child could be removed from the physical custody of Mary Doe if the circumstances warranted. In short, HCWD was a partner with Mary Doe in the care, custody and nurturing of Jane Doe. *See Smith, supra,* 431 U.S. at 845, 97 S.Ct. at 2110.

Considering the conditional liberty interest of Mary Doe and the continuing interest of the State of Ohio in insuring the safety of the child, Jane Doe, after being reunited with her natural mother, the district court required the state to provide appellant with the following procedural safeguards:

1) The plaintiffs (appellants) be given notice prior to the removal of the child (at the time of the removal where exigent circumstances exist or promptly thereafter) stating the reasons for the removal;

2) The plaintiffs (appellants) be given a full opportunity at the hearing to present witnesses and evidence on their behalf; and

3) The plaintiffs (appellants) may have a retained attorney at the hearing.

Appellants assert the district court should have required HCWD to disclose to them the identities of persons who com-

plained about Mary Doe's parental misconduct. However, due process does not require a formal and full-blown adversary hearing in every case. Due process requires that an individual be provided with a hearing appropriate to the nature of the case. *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). In that case the Supreme Court stated:

> The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.

*Boddie* at 378, 91 S.Ct. at 786.

Thus, due process requires that the Court assess the respective interests of HCWD and appellants in determining whether a particular procedural requisite, such as the ability to confront one's accusers, is necessary. In this regard, the Court notes that the interest of HCWD in the child's welfare and public safety is a very important interest. The interest of appellants is a limited, conditional liberty interest, since legal custody of the child remained with HCWD.

■ The order of the district court requires that HCWD inform appellants by written notice of the charges against them. Therefore, in this particular case, Mary Doe was effectively notified of the charges against her and was provided a hearing to confront those charges. The Court must be cognizant that if the parties who complained to HCWD are not afforded anonymity, they may be apprehensive about reporting parental misconduct to HCWD and thus undermine the state's interest in the child's welfare and public safety. *See Ong v. Tovey*, 552 F.2d 305 (9th Cir.1977). In assessing this important concern of HCWD in affording anonymity to individuals who report parental misconduct in light of the limited, conditional liberty interest of appellants, the Court finds that the notice required by the district court satisfies due process requirements and HCWD is not re-

quired to disclose the identity of persons who complain about parental misconduct.

■ Since judicial review of the removal decision is available under Ohio law, the district court reasoned that procedures of a more formal nature could not be justified. This Court disagrees with this conclusion of the district court and finds that two additional procedures are required in cases such as this in order to satisfy minimal procedural due process requirements.

First, due process necessitates that the hearing required by the district court be conducted by a neutral and detached agency official. This hearing official need not be a judicial officer. The simple requirement is that the hearing be conducted by an official other than the one initially handling the case. *Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604. Second, due process requires that the hearing officer conducting the removal hearing state in writing the decision reached and the reasons upon which the decision is based. *Goldberg v. Kelly*, 397 U.S. 254, 270, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970).

This case is accordingly remanded to the district court for modification of its judgment by adding the above two additional due process requirements. Hereafter, in cases involving committed children in the legal custody of HCWD, when removal from a natural parent is deemed appropriate by HCWD, due process requires:

1) The parents be given notice prior to the removal of the child (at the time of the removal when exigent circumstances exist or promptly thereafter) stating the reasons for the removal;

2) The parents be given a full opportunity at the hearing to present witnesses and evidence on their behalf;

3) The parents may have a retained attorney at the hearing;

4) The hearing must be conducted by a neutral and detached hearing officer; and

5) The hearing officer conducting the removal hearing must state in writing the decision reached and the reasons upon which the decision is based.

The district court's judgment, as modified by this opinion, is Affirmed.

## APPENDIX

Section 2151.353 of the Ohio Revised Code provides:

Disposition of neglected or dependent child.

(A) If the child is adjudged an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

(1) Permit the child to remain with his parents, guardian, or other custodian, subject to such conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child;

(2) Commit the child to the temporary custody of the department of public welfare, a county department of welfare which has assumed the administration of child welfare, county children services board, any other certified organization, the Ohio youth commission for the purpose of diagnostic study and report as provided by (B) of section 5139.05 of the Revised Code, either parent or a relative residing within or outside the state, or a probation officer for placement in a certified foster home;

(3) Commit the child to the temporary custody of any institution or agency in this state or another state authorized and qualified to provide the care, treatment, or placement that the child requires;

(4) Commit the child to the permanent custody of the county department of welfare which has assumed the administration of child welfare, county children services board, or to any other certified organization, if the court determines that

the parents have acted in such a manner that the child is a child without adequate parental care, it is likely that the parents would continue to act in such a manner that the child will continue to be a child without adequate parental care if a reunification plan were prepared pursuant to section 2151.412 [2151.41.2] of the Revised Code, and the permanent commitment is in the best interests of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding.

(B) No order for permanent custody shall be made at the hearing at which the child is adjudicated abused, neglected, or dependent except and unless the complaint alleging the abuse, neglect, or dependency contains a prayer requesting permanent custody and the summons served on the parents contains a full explanation that the granting of an order for permanent custody permanently divests them of their parental rights and contains a full explanation of their right to be represented by counsel and to have counsel appointed pursuant to Chapter 120. of the Revised Code if they are indigent.

If after making disposition as authorized by division (A)(2) or (3) of this section, a motion is filed in accordance with section 2151.413 [2151.41.3] of the Revised Code, which motion requests permanent custody of the child, the court may grant permanent custody of the child to the movant in accordance with section 2151.-414 [2151.41.4] of the Revised Code.

(C) No order of temporary custody shall be made unless the summons served on the parents contains a statement that an adjudication of abuse, neglect, or dependency may result in an order of temporary custody, a full explanation that the granting of an order of temporary

APPENDIX—Continued

custody will cause the removal of the child from their legal custody until the court terminates the order of temporary custody or permanently divests them of their parental rights, and a full explanation of their right to be represented by counsel and to have counsel appointed pursuant to Chapter 120. of the Revised Code if they are indigent.

CONTIE, Circuit Judge, dissenting.

The majority's decision articulates the due process requirements regarding the summary removal of children, who are already in the state's temporary legal custody, from their natural parents. I believe that the district court, and this court, should have abstained from deciding the constitutional questions presented in this case under the *Pullman* abstention doctrine.

Under certain limited circumstances, a federal district court should abstain from deciding constitutional issues arising from construction of state law. *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Pullman abstention should* only be applied if: (1) the case touches a sensitive area of public policy which federal courts should not enter unless absolutely necessary; (2) application of state law may avoid the need for constitutional adjudication; and (3) the state law in question has not been conclusively interpreted by the state courts. *Manney v. Cabell,* 654 F.2d 1280, 1283 (9th Cir.1980), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982).

I believe that all three elements are satisfied in the present case. The field of family relations is so clearly within the state's domain that federal courts should be hesitant to enter unless absolutely necessary. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct.

1388, 1403, 71 L.Ed.2d 599 (1982) (Rehnquist, J. dissenting); *United States v. Yazell,* 382 U.S. 341, 352, 86 S.Ct. 500, 506, 16 L.Ed.2d 404 (1966).

The second and third elements are also satisfied. In this case, a conclusive interpretation of O.R.C. § 2151.412 [1] may have obviated the need for deciding the minimal requirements of due process. No such conclusive interpretation of O.R.C. § 2151.412 has been given by the state courts. Adopted as a part of a comprehensive statute dealing with the custody of children, O.R.C. § 2151.412 provides for a written judicially-approved, comprehensive plan to reunify children in the state's temporary legal custody with their natural parents. I believe that requiring the parties in this case to comply with the requirements of O.R.C. § 2151.412 could provide the answers to the two major issues in this case without resort to the federal courts.

The first issue is whether Ohio's general welfare of the child standard for removal is too vague to comport with due process. The complaint is that a parent in the position of Mary Doe does not know what action she must take or avoid to keep custody of her child. This problem is squarely addressed in the Ohio statute. The comprehensive reunification plan required by O.R.C. § 2151.412 must state "[t]he actions that the parents are required to take to adjust their conduct or conditions so that the child will no longer be without adequate parental care." O.R.C. § 2151.412(D)(2). Thus, the Ohio legislature has given content to the arguably vague welfare of the child standard. A parent in Mary Doe's position would have a written statement, approved by a judge, stating exactly what she would have to do or not do to ensure that her child would not be taken from her. Since application of O.R.C. § 2151.412 would likely

1. O.R.C. § 2151.412 did not become effective until October 24, 1980, which was three months after Jane Doe had been removed and two months prior to the filing of this lawsuit. Inasmuch as the statute is remedial in nature and the plaintiffs seek only injunctive relief, Ohio's usual bar against retroactive application of a statute should not apply here.

avoid the necessity of a constitutional determination of vagueness, abstention would be proper.

The second, and more difficult, issue in this case is what process is due before a child is removed.[2] Who determines whether Mary Doe has adjusted her conduct in accordance with the reunification plan? What sort of notice and hearing is to be provided? While O.R.C. § 2151.412 does not provide any definitive answers, I believe that state courts should have the first opportunity to decide questions related to the application of the statute. Ohio courts may well provide for greater protection than is constitutionally required, thus obviating the need for resorting to the federal courts. For example, state courts may require judicial participation in the removal decision, except in cases where exigent circumstances are involved, since the written reunification plan must be judicially approved.

I fully realize that the majority's decision only states the minimum due process requirements[3] and that Ohio's courts may still interpret the Ohio statute more expansively. The real danger of the majority's holding is that it may inhibit the state's creativity in dealing with a difficult social issue which is squarely in the state's domain. *Santosky,* 102 S.Ct. at 1441 (Rehnquist, J., dissenting).

Abstention is not synonymous with abdication. I only propose that the parties first be required to proceed in the state courts so that the state's statute could be applied and interpreted. In the process, the need for a constitutional adjudication by the federal courts could be avoided. Even if it were not, the federal courts would then be able to decide the constitutional issues on the basis of a fully-developed record and with a definitive interpretation of state law. Accordingly, I would remand this case to the district court with instructions to abstain until such time as the parties have complied with O.R.C. § 2151.412 and that statute has been conclusively interpreted by the courts of Ohio.

---

**2.** If the district court had abstained and required the plaintiffs and defendants to comply with the requirements of O.R.C. § 2151.412, the second issue would only arise if, and when, a child was removed. I believe that implementation of the statute's requirement for a written reunification plan would reduce the number of removals due to the more certain standard for removal.

**3.** Inasmuch as I would remand the case with instruction to the district court to abstain, I express no view on the due process requirements adopted by the majority.