**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000473
27-MAR-2024
07:46 AM
Dkt. 57 SO**

NO. CAAP-18-0000473

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


TODD E. HART and HART OF KONA, REALTY, INC.,
Appellants-Appellants, v.
REAL ESTATE COMMISSION and REGULATED INDUSTRIES
COMPLAINTS OFFICE, Appellees-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 17-1-1214-07)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting C.J., and Wadsworth and McCullen, JJ.)

In this secondary appeal, Appellants-Appellants Todd E. Hart (**Hart**) and Hart of Kona, Realty, Inc. (collectively, the **Hart Appellants**) appeal from the May 11, 2018 Judgment, entered in favor of Appellees-Appellees Real Estate Commission (the **Commission**) and Regulated Industries Complaints Office (**RICO**),[1] in the Circuit Court of the First Circuit (**Circuit Court**).[2] The Hart Appellants also challenge the Circuit Court's May 11, 2018 "Order Affirming the Final Order of the . . . Commission Dated July 3, 2017" (**Order**). The Order and the Judgment affirmed the Commission's July 3, 2017 final order (**Final Order**), which (1) adopted in part the administrative hearings officer's August 26, 2016 Findings of Fact, Conclusions of Law, and Recommended Order

---

[1] RICO is an agency within the Department of Commerce and Consumer Affairs, State of Hawaiʻi.

[2] The Honorable Keith K. Hiraoka presided.

(**Recommended Decision**),[3] and (2) ordered the imposition of a $10,000 fine against, and the revocation of the real estate broker's license of, each of the Hart Appellants.

On appeal, the Hart Appellants contend that the Circuit Court erred in affirming the Commission's decision because: (1) there was no evidence that the Hart Appellants failed "to maintain a reputation for or record of competency, honesty, truthfulness, financial integrity, and fair dealing," and because Hawaii Revised Statutes (**HRS**) § 467-14(20) is unconstitutionally vague; (2) the Commission did not rule on which party had the burden of proof in the proceedings; (3) the Commission should not have given collateral estoppel effect to an arbitration award against the Hart Appellants; (4) the Hart Appellants' failure to report past judgments to the Commission did not involve reportable "conduct in the practice of the licensee's profession," HRS § 436B-16(a); (5) the Commission "assum[ed] that Hart acted dishonestly" without findings of dishonesty in the record; (6) the disciplinary actions taken against the Hart Appellants, *i.e.*, license revocation and fines of $10,000 each, "were inappropriate based upon the record assembled here"; (7) RICO's attorney addressed the Commission *ex parte* at a hearing; and (8) the Commission's findings were inadequate as to whether the Hart Appellants acted dishonestly or intentionally misrepresented "anything."

We determine whether the Circuit Court was right or wrong in its decision, applying the standards of HRS § 91-14(g)[4]

---

[3] David H. Karlen was the administrative hearings officer (**Hearings Officer**). The Commission adopted the Hearings Officer's findings of fact (**FOFs**) in their entirety.

[4] HRS § 91-14(g) (Supp. 2016) provides in relevant part:

> Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> > (1) In violation of constitutional or statutory provisions;

(continued...)

2

to the agency's decision.  See <u>Paul's Elec. Serv., Inc. v.</u>
<u>Befitel</u>, 104 Hawaiʻi 412, 416, 91 P.3d 494, 498 (2004).
Additionally, "[i]f the legislature has granted the agency
discretion over a particular matter, then we review the agency's
action pursuant to the deferential abuse of discretion standard
(bearing in mind the legislature determines the boundaries of
that discretion)."  <u>Id.</u> at 419-20, 91 P.3d at 501–02.

   After reviewing the record on appeal and the relevant
legal authorities, and giving due consideration to the issues
raised and the arguments advanced by the parties, we resolve the
Hart Appellants' contentions as follows and affirm.

   (1) The Hart Appellants contend there was no evidence
that they failed to maintain a "reputation" for or "record" of
competency, honesty, truthfulness, financial integrity, and fair
dealing, so as to establish a violation of HRS § 467-14(20).[5]
They also argue that HRS § 467-14(20) is unconstitutionally vague
because it does not identify specific wrongful acts that can
result in discipline.

---

[4]  (...continued)
   (2)   In excess of the statutory authority or
         jurisdiction of the agency;

   (3)   Made upon unlawful procedure;

   (4)   Affected by other error of law;

   (5)   Clearly erroneous in view of the reliable,
         proative, and substantial evidence on the whole
         record; or

   (6)   Arbitrary, or capricious, or characterized by
         abuse of discretion or clearly unwarranted
         exercise of discretion.

[5]    HRS § 467-14(20) (Supp. 2015) provides:

      In addition to any other actions authorized by law,
   the commission may revoke any license issued under this
   chapter, suspend the right of the licensee to use the
   license, fine any person holding a license, registration, or
   certificate issued under this chapter, or terminate any
   registration or certificate issued under this chapter, for
   any cause authorized by law, including but not limited to
   the following:

      . . . .

   (20)   Failure to maintain a reputation for or record
          of competency, honesty, truthfulness, financial
          integrity, and fair dealing[.]

We address the latter argument first. The Hawaiʻi Supreme Court has recognized that "[w]hen a statute is not concerned with criminal conduct or first amendment considerations, the court must be fairly lenient in evaluating a claim of vagueness." Gardens of West Maui v. Cnty. of Maui, 90 Hawaiʻi 334, 343, 978 P.2d 772, 781 (1999) (quoting Doe v. Staples, 706 F.2d 985, 988 (6th Cir. 1983)). In order "[t]o constitute a deprivation of due process, the civil statute must be so vague and indefinite as really to be no rule or standard at all. To paraphrase, uncertainty in [a] statute is not enough for it to be unconstitutionally vague; rather, it must be substantially incomprehensible." Id. (quoting Staples, 706 F.2d at 988) (original brackets and citations omitted).

HRS § 467-14(20) apprises real estate licensees that they must not take actions counter to maintaining a record of "competency, honesty, truthfulness, financial integrity, and fair dealing[.]" The statute is not so vague as to "be substantially incomprehensible" or "so vague and indefinite as really to be no rule or standard at all." Thus, HRS § 467-14(20) is not unconstitutionally vague.

We next address the contention that the Commission erred in finding a violation of HRS § 467-14(20). The Hart Appellants do not contest the FOFs regarding the conduct that was deemed by the Commission to violate this provision. The FOFs are therefore binding on appeal. Poe v. Haw. Labor Rels. Bd., 97 Hawaiʻi 528, 536, 40 P.3d 930, 938 (2002) (ruling that an agency's unchallenged findings are binding on appeal). Rather, the Hart Appellants argue that "[t]he statute is not talking about one or two transactions" and "[n]o evidence was presented regarding anyone's 'reputation' or general 'record'."

The Commission adopted the Hearings Officer's conclusion of law (**COL**) that "the breaches of the [Sale of Assets] Agreement with Ashley [Realty, Inc.], and the failure to fully satisfy the Ashley [A]rbitration [A]ward and subsequent judgments, mean that [RICO] has proven by a preponderance of the evidence that Mr. Hart has failed to maintain a record of financial integrity and fair dealing in violation of [HRS

4

§ 467-14(20)]." The Commission further concluded, *inter alia*, that a single failure to violate the applicable regulations constitutes a part of a licensee's record and, here, the Hart parties acknowledged that a failure to pay may raise a question as to financial integrity.

Because the Commission is tasked with enforcing the mandates of HRS Chapter 467, see HRS § 467-4(3) (2013), the Commission's interpretation of HRS § 467-14(20) as applied to the evidence presented should be given deference. See Gillan v. Gov't Emps. Ins. Co., 119 Hawaiʻi 109, 114, 194 P.3d 1071, 1076 (2008) ("[I]n the case of ambiguous statutory language, the applicable standard of review regarding an agency's interpretation of its own governing statute requires this court to defer to the agency's expertise and to follow the agency's construction of the statute unless that construction is palpably erroneous[.]" (ellipsis omitted) (quoting Vail v. Emps' Ret. Sys., 75 Haw. 42, 66, 856 P.2d 1227, 1240 (1993))). We cannot conclude that the Commission's interpretation of HRS § 467-14(20) in these circumstances is palpably erroneous or inconsistent with the intent of the statutory mandate. See Haole v. State, 111 Hawaiʻi 144, 152, 140 P.3d 377, 385 (2006). The purpose of HRS Chapter 467 "is the protection of the general public in its real estate transactions[,]" HRS § 467-4(2) (2013), and the Commission's interpretation of HRS § 467-14(20) furthers this purpose.

On this record, we conclude that the Commission did not err in finding that the Hart Appellants violated HRS § 467-14(20).

(2) The Hart Appellants contend that the burden of proof should have been on RICO, the Commission's Final Order "never indicates where the burden is being placed[,]" and "[p]erhaps the Commission felt that . . . it was appropriate to shift the burden of proof . . . ."

The Hart Appellants are correct that under Hawaiʻi Administrative Rules (**HAR**) § 16-201-21(d) (1990), "the burden of proof, including the burden of producing the evidence and the burden of persuasion, [was on] the party initiating the

5

proceeding" — here, RICO.  The Hart Appellants are incorrect, however, in asserting that the Commission's Final Order does not indicate where the burden of proof was placed.  Further, the Hart Appellants provide no support for their speculation that the Commission shifted the burden of proof to them.  The Commission's Final Order adopted all but one of the Hearings Officer's COLs regarding Hart.  The adopted COLS included the Hearings Officer's repeated conclusion that "[RICO] has proven by a preponderance of the evidence" that Hart violated the statute at issue.  The adopted COLS also included, for example, the Hearings Officer's conclusion that "[RICO] has failed to prove by a preponderance of the evidence" that Hart violated HRS § 467-14(8).  In short, the COLs adopted by the Commission make clear that the burden of proof was placed on RICO.  See also Igawa v. Koa House Rest., 97 Hawaiʻi 402, 409 n.6, 38 P.3d 570, 577 n.6 (2001) (presuming that administrative appeals board applied proper evidentiary standard of review where it did not expressly state the applicable standard (quoting State v. Kotis, 91 Hawaiʻi 319, 340, 984 P.2d 78, 99 (1999))).

(3) The Hart Appellants contend that the Commission "failed to recognize the discretionary nature of collateral estoppel" and improperly gave "collateral estoppel effect" to the Ashley Arbitration Award, which had been reduced to a judgment.[6] Relying on Exotics Hawaii-Kona, Inc. V. E.I. Dupont De Nemours & Co., 104 Hawaiʻi 358, 372, 90 P.3d 250, 264 (2004), the Hart Appellants do not argue that the elements of collateral estoppel, or issue preclusion, were not met, but assert that the Commission, in its discretion, should have decided not to apply collateral estoppel in the circumstances of this case.

---

[6]    On September 20, 2006, the Circuit Court of the Third Circuit entered judgment (**2006 Judgment**) confirming the Ashley Arbitration Award.  The Hart Appellants appealed, and on February 25, 2011, this court issued a memorandum opinion vacating the 2006 Judgment and remanding the case for further proceedings.  See Ashley v. Hart, No. 28207, 2011 WL 682109, at *11 (Haw. App. Feb. 25, 2011) (mem.).  Following further proceedings, on March 2, 2012, the Circuit Court of the Third Circuit again entered judgment (**2012 Judgment**) confirming the Ashley Arbitration Award.  The Hart Appellants appealed, and on October 24, 2014, this court issued a summary disposition order affirming the 2012 Judgment.  See Ashley v. Hart, No. CAAP-12-0000299, 2014 WL 5420011, at *6 (Haw. App. Oct. 24, 2014).

Initially, we note that the Hart Appellants do not contest any of the Hearings Officer's FOFs regarding the Ashley Arbitration Award, which are therefore binding and which the Commission adopted. We further note that the Commission's Final Order and the Hearings Officer's FOFs and COLs do not mention collateral estoppel or issue preclusion. The Hart Appellants point to a passage in the Hearings Officer's Recommended Decision in which the Hearings Officer stated, "Mr. Hart cannot avoid the effects of the arbitration award . . . [which] cannot be changed." Assuming *arguendo* that this statement represents an application of the collateral estoppel doctrine and that the Commission implicitly adopted that application, it is incorrect to say that the Hearings Officer (and by extension the Commission) did not consider issues of fairness in determining the effect of the Ashley Arbitration Award. Indeed, the Hearings Officer noted that the award lacked detail and explicitly weighed the equities of the situation. On this record, we cannot conclude that the Commission erred in determining the effect of the Ashley Arbitration Award.

(4) The Hart Appellants contend that the Commission erred in concluding that the Ashley Arbitration Award[7] and the Wills Judgment had to be reported to the Commission pursuant to HRS § 436B-16(a).[8] They argue that they were not required to report the Ashley Arbitration Award and the Wills Judgment because these judgments did not involve "conduct in the practice of the licensee's profession or vocation." HRS § 436B-16(a). They argue that for the same reason, there was no violation of

---

[7] It is not entirely clear, but it appears that the Hart Appellants may be using the phrase "Arbitration Award" to refer not only to the Ashley Arbitration Award itself, but also to the 2006 and 2012 Judgments confirming the award.

[8] HRS § 436B-16(a) (2013) provides:

> Each licensee shall provide written notice within thirty days to the licensing authority of any judgment, award, disciplinary sanction, order, or other determination, which adjudges or finds that the licensee is civilly, criminally, or otherwise liable for any personal injury, property damage, or loss caused by the licensee's conduct in the practice of the licensee's profession or vocation. A licensee shall also give notice of such determinations made in other jurisdictions.

HRS § 436B-19(17).[9/]

As to the Ashley Arbitration Award, the Commission reasoned that the Hart Appellants violated HRS § 436B-16(a) because "[t]he underlying transaction involved the sale of [Hart]'s real estate business, including certain covenants concerning Respondent Hart's actions as a real estate licensee." In turn, FOF 2b, which the Commission adopted, states the arbitrator's conclusion that "Hart breached the Covenant Not to Compete [in the Sale of Assets Agreement] by representing individuals, including buyers and sellers, in several real estate transactions on the Island of Hawaii . . . ."

As to the Wills Judgment, which arose out of a failed sale of property owned by Hart, the Commission reasoned:

> [A] licensee does not disavow the obligation to follow the real estate practice regulations when acting in their private capacity. A licensee cannot "take off his licensee hat", even when selling the licensee's own property. <u>See</u> HAR § 16-99-3(a) ("To fully protect the general public in its real estate transactions, <u>every licensee shall conduct business, including the licensee's own personal real estate transactions</u>, in accordance with this section."[).]

On this record, we cannot conclude that the Commission erred in determining that the Ashley Arbitration Award (and the 2006 and 2012 Judgments) and the Wills Judgment involved "conduct in the practice of the licensee's profession or vocation[,]" such that the Hart Appellants were required to report the award and judgments to the Commission under HRS § 436B-16(a).

(5) The Hart Appellants contend there were no findings that they "made any misrepresentation or engaged in any fraudulent or dishonest conduct[,]" and the Final Order "seems to assume that there was fraudulent or dishonest conduct." In this

---

[9/] HRS § 436B-19(17) (2013) provides:

> In addition to any other acts or conditions provided by law, the licensing authority may refuse to renew, reinstate or restore, or may deny, <u>revoke</u>, suspend, or condition in any manner, any license for any one or more of the following acts or conditions on the part of the licensee or the applicant thereof:
>
> . . . .
>
> (17) Violating this chapter, the applicable licensing laws, or any rule or order of the licensing authority.

regard, the Hart Appellants appear to be disputing the
Commission's conclusion that they violated HAR § 16-99-3(b).[10/]

In reaching this conclusion, the Commission reasoned:

> Regarding HAR § 16-99-3(b), the Hearings Officer
> concluded that "the breaches of the Agreement with Ashley
> generally did not lead to a failure to protect 'the public'
> but rather a failure to protect Ashley in their non-public
> personal business capacity." Apparently, the Hearings
> Officer did not consider Ashley to be a member of the
> public. The Commission disagreed with and rejected this
> conclusion. Individuals who engage in private business
> transactions do not forfeit their right to be free from
> fraud, misrepresentation, or unethical practices in the real
> estate field. On the contrary, the Commission concluded
> that HAR § 16-99-3(b) requires real estate licensees to
> protect <u>all</u> members of the public, especially those with
> whom they deal, from fraud, misrepresentation, or unethical
> practices in the real estate field.

(Record citation omitted.) In addition, FOF 2, which the
Commission adopted, states the arbitrator's conclusions that Hart
breached: (1) the covenant not to compete in the Sale of Assets
Agreement; and (2) the Warranty of Quiet Enjoyment in the
Agreement "by failing to disclose known pending claims and/or
lawsuits to Ashley . . . ."

HAR § 16-99-3(b) requires a licensee to protect the
public not only from fraud, but also from "unethical practices in
the real estate field," and to try to eliminate "practices in the
community which could be damaging to the public or to the dignity
and integrity of the real estate profession." We cannot conclude
that the Commission's interpretation of HAR § 16-99-3(b) in these
circumstances is palpably erroneous or inconsistent with the
intent of the rulemaker, *i.e.*, the Commission. See <u>Gillan</u>, 119
Hawaiʻi at 114, 194 P.3d at 1076; <u>Haole</u>, 111 Hawaiʻi at 152, 140
P.3d at 385; HAR § 16-99-1 ("This chapter, adopted by the real
estate commission, . . . is intended to clarify and implement
[HRS] chapter 467 . . . to the end that the provisions
thereunder, for the protection of the general public in its real

---

[10/]    HAR § 16-99-3(b) (2016) states:

> The licensee shall protect the public against fraud,
> misrepresentation, or unethical practices in the real estate
> field. The licensee shall endeavor to eliminate any
> practices in the community which could be damaging to the
> public or to the dignity and integrity of the real estate
> profession.

estate transactions, may be best effectuated and the public interest most effectively served.").

On this record, we conclude that the Commission did not err in finding that the Hart Appellants violated HAR § 16-99-3(b).

(6) The Hart Appellants contend that "on the record assembled here, license revocation and fines are too harsh." (Formatting altered.)  They provide no authority supporting this contention.

Pursuant to HRS §§ 436B-16, 467-14, and 467-26 (2013), the Commission was authorized to take the disciplinary actions that it did in this matter.  Based on our review of the record, we cannot say that the Commission abused its discretion in imposing the penalties it did under these circumstances.  See Paul's Elec. Serv., 104 Hawaiʻi at 419-20, 91 P.3d at 501-02.

(7) The Hart Appellants contend that "the proceedings below were flawed because the Commission permitted . . . RICO's lawyer to address the Commission *ex parte* at its December 16, 2017 meeting, when [the Hart Appellants] never received the notice of the meeting and had no idea it was occurring." (Formatting altered.)

In proceedings before the Commission, private communications between a party and the Commission are prohibited.  See HAR § 16-201-25(a) (1990).  Here, however, the December 16, 2016 hearing before the Commission was not an *ex parte* communication.

At the June 23, 2016 administrative hearing, the Hearings Officer asked Hart for his current address, which Hart provided.  The Hearings Officer informed Hart that after the hearing, the Hearings Officer would write up a recommended decision and send it to both sides, with "instructions . . . as to what to do next, whether you object or support or partially object and partially support . . . ."  The Hearings Officer further informed Hart:

> HEARINGS OFFICER KARLEN: So it's going to be sent certified mail, return receipt requested, and we can send it to your P.O. Box . . . ; is that correct?
>
> MR. HART: Yes.

10

. . . .

HEARINGS OFFICER KARLEN: . . . .

If you don't pick up your mail, you may lose the opportunity to file objections in the 15 days because we've had lots of people who deliberately don't pick up their mail. And I can't tell from here what you're doing in Kona, so when you get that e-mail, know that it's coming in the mail --

MR. HART: Yeah.

HEARINGS OFFICER KARLEN: -- and please make sure to pick it up and sign the green card.

MR. HART: I can do that.

Thereafter, on August 26, 2016, the Hearings Officer submitted his Recommended Decision to the Commission, copies of which were also transmitted to the parties. On September 7, 2016, RICO filed Exceptions to Portions of the Recommended Decision. On November 4, 2016, the Commission sent to the Hart Appellants via certified mail, return receipt requested, a Notice of Opportunity to Present Oral Arguments, informing the parties that on November 23, 2016, the Commission would hear oral arguments. The November 4, 2016 mailings were sent to the Hart Appellants at the address provided by Hart at the June 23, 2016 administrative hearing, but were returned to the Hearings Officer "unclaimed." On November 23, 2016, the Commission sent to the Hart Appellants via certified mail, return receipt requested, a Rescheduled Notice of Opportunity to Present Oral Arguments, informing the parties that on December 16, 2016, the Commission would hear oral arguments. The November 23, 2016 mailings were sent to the Hart Appellants at the address provided by Hart at the June 23, 2016 administrative hearing, but were returned to the Hearings Officer "unclaimed."

The Hart Appellants were properly served with notice of the December 16, 2016 hearing, pursuant to HAR § 16-201-12(a) (1990). On December 16, 2016, RICO's attorney appeared before the Commission and presented oral argument. No one appeared on behalf of the Hart Appellants. In these circumstances, there was no *ex parte* communication between RICO and the Commission.

(8) The Hart Appellants contend that "in view of the ambiguities in the record, the case should be remanded for

11

further proceedings."  (Formatting altered.)

Based on our review of the record, we conclude that the Commission's Final Order, which adopts the Hearings Officer's FOFs in their entirety and adopts his COLs as specified, is sufficient to support the Commission's decision, and that no remand is necessary.

For the reasons discussed above, the Judgment, entered on May 11, 2018, in the Circuit Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, March 27, 2024.


On the briefs:

|  |  |
|---|---|
| | /s/ Katherine G. Leonard |
| John Rapp | Acting Chief Judge |
| for Appellants-Appellants. | |
| | |
| Wendy J. Utsumi | /s/ Clyde J. Wadsworth |
| for Appellee-Appellee | Associate Judge |
| Regulated Industries | |
| Complaints Office, Department | |
| of Commerce and Consumer | /s/ Sonja M.P. McCullen |
| Affairs | Associate Judge |