**TENNESSEE VALLEY AUTHORITY v.
LENOIR CITY, TENN., et al.**

No. 535.

District Court, E. D. Tennessee, N. D.

June 5, 1947.

Joseph C. Swidler, Chief Counsel (William C. Fitts, Jr., Charles J. McCarthy and Thomas J. Griffin, all of Knoxville, Tenn., on the brief), for plaintiff.

Charles H. Smith, of Knoxville, Tenn., Bass, Berry & Sims, of Nashville, Tenn., and Kirk, Dannel & Fowler, of Lenoir City, Tenn., for defendants.

TAYLOR, District Judge.

### Findings of Fact and Conclusions of Law

This suit does not involve the basic right of the Tennessee Valley Authority, an arm of the Federal Government, to compete with private enterprise in the creation and distribution of electric energy. It involves, rather, the construction of the contract between The Authority and the City of Lenoir City, and a determination whether an ordinance of the City and a so-called "enabling act" are unconstitutional, because if enforced as properly construed, they would impair the obligation of the contract. The primary questions of the rights of The Authority have heretofore been before the courts and passed upon in decisions which control this court's decision. The action here before the court, to state its specific objectives, seeks a declaratory judgment that the provisions of a bond ordinance of the City of Lenoir City adopted February 10, 1941, which pledges the revenues of the City's electric system as security for issues of funding and refunding bonds therein authorized and obligates the City to charge rates sufficient to meet payments on the principal and interest on the bonds, and also the provisions of Chapter 357 of the Private Acts of Tennessee of 1941, which purported to validate the ordinance, are invalid on the ground that they impair the obligations of a power contract dated February 28, 1938, between the Tennessee Valley Authority and Lenoir City, by the terms of which the City made certain agreements both as to the rates to be charged and the disposition of the revenues of its electric system. The relevant facts have been stipulated by the parties and the case is here on cross-motions for summary judgment. A determination of the validity of the 1941 ordinance and Validating Act raises a number of questions, the principal of which are the construction of the power contract, the statutory authority of the Tennessee Valley Authority and of the City to enter into the power contract, and the constitutionality of the provisions of the Tennessee Valley Authority Act, 16 U.S. C.A. § 831 et seq., which authorizes it to include in its power contracts provisions as to resale rates and disposition of revenues.

Subordinate issues arise out of the fact that in 1936, at which time it owned a small electric distribution system which supplied its municipal requirements and the requirements of about 100 customers, divided almost equally between commercial and residential, Lenoir City issued $457,500 of bonds, to which the revenues of the municipal electric and water systems were pledged. In 1939 the City acquired the distribution system of the Tennessee Electric Power Company and paid for this system with the proceeds of an issue of $272,000 of revenue bonds. While the City and the other parties concerned questioned the validity of the pledge of the 1936 bond ordinance, it was agreed that a portion of the revenues of the combined system (approximately 14 per cent), computed according to a formula set out in the 1939 bond ordinance, would be reserved to the 1936 bonds and that the balance of the revenues would be pledged to the 1939 bonds. References hereafter to "14 per cent" are to the percentage determined in accordance with the 1939 bond ordinance.

The 1941 bonds consisted of two issues, a $453,000 refunding issue and a $65,000 funding issue. The holders of the 1936

bonds were given no opportunity to exchange their bonds, for bonds of the new issue. Their bonds were either purchased by W. N. Estes and Company or Cumberland Securities Corporation, the bond houses which represented the City in the transaction, or were called by the City and then taken up by the bond houses. TVA assisted in the preparation of the 1939 ordinance and it concedes that by virtue of its participation therein it is estopped from questioning the pledge to the 1936 bonds of 14 per cent of the revenue of the combined systems. The City originally contended that the pledge to the 1936 bonds extended to all the revenues of the electric system but now concedes that it extended to only 14 per cent of the revenues. This raises the question whether the holders of the 1941 refunding bonds are subrogated to the rights of the holders of the 1936 bonds and are, therefore, entitled to a pledge of 14 per cent of the revenues of the electric system.

There are conflicting views as to the wisdom of permitting the Federal Government to engage in the business of selling electric power and particularly of permitting it to require the inclusion in its contracts of provisions as to resale rates and the disposition of revenues, but the question of the wisdom of these provisions is not before the Court. Their validity has been sustained by decisions of the highest state and federal courts, which are binding on this Court.

The stipulation of the parties is adopted as the Court's findings of fact and the Court makes the following conclusions of law:

1. The pleadings, stipulations, and admissions of the parties show that there is no genuine issue as to any material fact. The case is one which may properly be adjudicated on a motion for summary judgment.

2. By section 7(b) of the contract of February 28, 1938, the City agrees to charge the resale rates set forth in schedules attached to the contract and not to depart therefrom except by agreement of the parties.

3. The provisions of section 7(d) of the contract of February 28, 1938, specify the manner in which the City shall dispose of its revenues from electric operations. This section provides that after the payment of (1) operating expenses, (2) interest and amortization charges and/or sinking fund payments on bonds or other indebtedness applicable to the electric system, which I construe to mean bonds or other indebtedness incurred in the acquisition or construction of the system, (3) reserves, and (4) a payment to the general fund of the City of a return on that part of the cost of the system which has been paid for by the City's general funds and a payment of tax equivalents, all remaining revenues shall be considered surplus revenues which may be used for the purchase or retirement before maturity of bonds applicable to the electric system and, if not so devoted, "shall serve as the basis for the reduction or elimination of surcharges to consumers, and thereafter for the reduction of rates."

4. Under the foregoing section of the contract the City obligated itself not to devote surplus revenues to any purpose other than the retirement of bonds applicable to the electric system, the reduction or elimination of surcharges and the reduction of rates. This section prohibited the diversion of surplus electric revenues to purposes other than those specified in the contract. This provision guaranteed the lowest possible cost to the consumer consistent with meeting the City's outstanding obligations incurred to acquire the facilities with which to perform and maintain the service. A contract substantially identical with the contract here involved was so construed by the Supreme Court of Tennessee in Memphis Power & Light Co. v. City of Memphis, 172 Tenn. 346, 112 S.W.2d 817. The contract between TVA and Lenoir City was entered into nine months after the decision in the City of Memphis case and the parties must be deemed to have contracted in the light of the construction adopted by the court in that case.

5. The electric energy produced and marketed by the Tennessee Valley

Authority constitutes property belonging to the United States and may constitutionally be disposed of under the provisions of section 3, clause 2, of Article IV of the Constitution: "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States * * *."

■ 6. Under the property clause of the Constitution as interpreted by the United States Supreme Court, Congress may, in disposing of property, attach such reasonable conditions as are necessary for the general welfare. If the purchaser does not wish to take the property with the conditions attached by Congress, his remedy is to decline to purchase it. If he accepts the benefits of the contract, he must comply with its conditions.

■ 7. The provisions as to resale rates and disposition of revenues are not such provisions as this Court can say bear no reasonable relation to the policy of Congress enunciated in the Tennessee Valley Authority Act of distributing electric power for the primary benefit of the consumer and in such a way as to procure cheap electricity for the Tennessee Valley region. Tennessee Elec. Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543.

8. The Tennessee Valley Authority Act authorizes the inclusion in contracts for the sale of power of the provisions as to resale rates and disposition of revenues included in the contract between TVA and Lenoir City.

9. By section 4 of the Revenue Bond Act of 1935, Chapter 33 of the Public Acts of Tennessee of 1935, Extra Session, Tenn. Code (Williams, 1934) sec. 4406.34 et seq., the City was expressly authorized to enter into the contract here involved and to include in such contract provisions as to resale rates and the manner of the disposition of revenues.

■ 10. Neither the Revenue Bond Act of 1935 nor the contract here involved violates any constitutional provision of the State of Tennessee. The validity of a sim-

ilar statute and a substantially identical contract was sustained by the Supreme Court of Tennessee in the case of Memphis Power & Light Co. v. City of Memphis, 172 Tenn. 346, 112 S.W.2d 817. The decision in the City of Memphis case is binding upon this Court under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

■ 11. The bond ordinance of February 10, 1941, is a law within the meaning of Article I, section 10, clause 1, of the Constitution prohibiting any state from passing any law impairing the obligation of contracts.

■ 12. The provisions of Article I, section 10, clause 1, of the Constitution prohibiting the states from passing any law impairing the obligation of contracts protects contracts entered into by an agency of the Federal Government.

■ 13. The ordinance of February 10, 1941, pledges revenues of the electric distribution system to the bonds therein authorized and obligates the City to make and collect rates and charges sufficient to service the bonds therein authorized in violation of the existing power contract between TVA and Lenoir City. By this ordinance the City undertook new and substantial duties in opposition to those contained in the contract and provided for their performance. This ordinance therefore constituted an impairment of the obligation of the power contract between TVA and Lenoir City.

■ 14. For the same reason, Chapter 357 of the Private Acts of Tennessee of 1941, which attempted to validate the ordinance of 1941, likewise by its terms impaired the obligation of the power contract between TVA and Lenoir City.

■ 15. Chapter 357 of the Private Acts of Tennessee of 1941 was not an exercise of the police power. The police power of the State is the reserved power of the State to take such action as may be necessary in the public interest. In enacting the 1941 Validating Act, the Legislature did not purport to be dealing with

462

any question of general public concern, but was solely attempting to validate a bond issue. Whether the contract would be subject to abrogation by the State in the proper exercise of its police power is not here presented.

16. In purchasing the outstanding 1936 bonds and in paying for such of the 1936 bonds as were delivered to the Third National Bank pursuant to the City's call, W. N. Estes & Company and Cumberland Securities Corporation were acting as agents for the City. When they took title to the bonds, therefore, they took title as trustees for the City, and did not secure beneficial title. Regardless of this, it is my opinion that the holders of the 1941 refunding bonds nevertheless are subrogated to the rights of the 1936 bondholders and that the pledge of revenues in the 1941 ordinance is valid to the extent of 14 per cent of the revenues. The funds received from the sale of these bonds were used to redeem the 1936 bonds. If the validity of the pledge is recognized insofar as it applies to 14 per cent of the revenues, the revenues of the system are subject to no greater burden than they were before the adoption of the 1941 ordinance. This construction will not, therefore, impair in any way the rights of TVA under the power contract.

17. The holders of the 1941 bonds were on notice as to the power contract between the TVA and Lenoir City by reason of the provision of section 8 of the ordinance of February 10, 1941, specifically directing their attention to the provisions of the 1939 ordinance authorizing the issuance of the electric revenue bonds, the reference in the 1939 ordinance to the intention of the City to purchase and distribute TVA power and the provisions of the Revenue Bond Act of 1935 under which the 1939 bonds were issued.

18. TVA had no notice either of the proposed adoption of the bond ordinance of 1941 or of the Validating Act. TVA acted diligently in discovering their existence and as soon as TVA learned of their existence, it acted diligently to protect its rights.

19. The present case is an actual case or controversy involving rights and other legal relations as to which declaratory relief is appropriate.

20. The City has assumed obligations in violation of the rights of TVA under the contract and is asserting a continuing right to divert electric revenues to the payment of the bonds issued under the 1941 ordinance and to increase rates if necessary in order to service such bonds. For this reason the case is a proper one for injunctive relief.

21. The case is a proper one for injunctive relief for the further reason that an injunction is necessary to protect the public interest and to enforce the public policy of the TVA Act.

22. This action may properly be maintained as a class action under either subdivision 1 or 2 of Rule 23(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

23. Plaintiff is entitled to a declaratory judgment that the ordinance of February 10, 1941, impairs the obligation of its power contract of February 28, 1938, and is unconstitutional and void insofar as it pledges or attempts to pledge as security for the bonds therein authorized any part of the revenues of the City's electric system other than the amount thereof which was recognized in the 1939 bond ordinance to have been pledged as security for the 1936 bonds.

24. Chapter 357 of the Private Acts of Tennessee of 1941 impairs the obligation of its power contract of February 28, 1938, and is unconstitutional and void to the extent that it purports to validate the provisions of the ordinance of February 10, 1941, which pledge or attempt to pledge as security for the bonds therein authorized any part of the revenues of the City's electric system other than the amount thereof which was recognized in the 1939 bond ordinance to have been pledged as security for the 1936 bonds.

25. The City of Lenoir City, its officers, agents, and employees should be permanently enjoined and restrained from divert-

ing to the payment of the principal of or interest on the bonds issued pursuant to the ordinance of February 10, 1941, any part of the revenues of the City's electric system other than the amount thereof which the 1939 ordinance recognizes to have been pledged as security for the 1936 bonds.

26. The City of Lenoir City, its officers, agents, and employees should be permanently enjoined and restrained from charging or endeavoring to charge resale rates higher than those permitted by the power contract of February 28, 1938, between the Tennessee Valley Authority and Lenoir City.