**GOLD POINT MARINA, INC., Plaintiff,**

v.

**TENNESSEE VALLEY AUTHORITY and The City of Chattanooga, Tennessee; Mayor Gene Roberts, Charles A. Rose, Commissioners John Franklin, James Eberle, Paul Clark and Tom Kennedy, in their capacity as the Board of Commissioners of the City of Chattanooga, Tennessee and/or the Chattanooga Board of Zoning Appeals, Defendants.**

Civ. No. 1–84–572.

United States District Court, E.D. Tennessee, S.D.

Jan. 6, 1986.

**40**

W. Neil Thomas, III, Thomas, Mann & Gossett, Chattanooga, Tenn., for plaintiff.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Assoc. Gen. Counsel, Robert C. Glinski, Tennessee Valley Authority, Knoxville, Tenn., for Tennessee Valley Authority.

Michael A. McMahan, Chattanooga, Tenn., for defendants.

### MEMORANDUM

EDGAR, District Judge.

Plaintiff brings this action against the Tennessee Valley Authority (hereinafter "TVA") challenging the validity of a provision in a deed through which the plaintiff acquired a tract of land on Chickamauga Lake in Hamilton County, Tennessee in 1964. This matter is presently before the Court for consideration of TVA's motion to dismiss or, in the alternative, for summary judgment.

Pursuant to statute TVA is empowered to convey land to private persons and entities when such a conveyance is consistent with the purposes for which the TVA was established. One of the statutory provisions allowing such conveyances is 16 U.S.C. § 831c(k)(a) which provides that TVA shall have power in the name of the United States to:

> [C]onvey by deed, lease, or otherwise, any property in the possession of or under the control of the [TVA] to any person or persons, for the purpose of recreation or use as summer residence, or for the operation of any such premises of pleasure resorts for boating, fishing, bathing, or any similar purpose; ....

It was pursuant to this statutory provision that, in 1964, plaintiff purchased a tract of land located on Chickamauga Lake in Hamilton County, Tennessee from TVA. The special warranty deed conveying the Chickamauga Lake property to plaintiff contains the following language:

> It is further understood and agreed that this conveyance is made upon and subject to the express condition that the land and appurtenant easement rights hereby conveyed shall be used solely for purposes of providing commercial recreation services to the general public, and that the land and appurtenant easement rights shall not be sold, leased, or otherwise alienated except as a whole without written consent of grantor (which written consent will be given by grantor in all cases where it finds, in its sole discretion, that alienation of less than the whole will, under the terms and on the basis proposed by grantee, tend to promote maximum public use of the entire property in a manner ordinarily associated with waterfront resort development). Upon breach of this condition in whole or in part, the grantor, and its successors, shall have the right to re-enter and take possession of said land, and to hold, own, and possess the same in the same manner and to the same extent as if this conveyance had never been....

The tract of land involved was originally zoned for "local business" use which, TVA alleges, was a use compatible with the deed restriction. In 1975, the City of Chattanooga rezoned 31 acres of the tract from local business use to highway commercial use (C–1) and the remaining 100 acres from local business use to a residential classification (R–1).[1] In 1978, plaintiff requested that TVA modify the deed restrictions to permit the residential development of the tract. TVA had permitted the modification of a similar deed restriction that applied to a contiguous piece of property owned by the Lakeshore Resort.

In a letter dated November 29, 1978, the Chairman of the TVA Board of Directors, S. David Freeman, rejected plaintiff's request, stating:

TVA's purpose in imposing this restriction was to assure the public's continued use and enjoyment of this waterfront land and the lake at this point.

While TVA did modify deeds to a few tracts sold with similar restrictions to permit broader recreation uses than those specified in the original deeds, the Board later decided that it would be in the public's best interests not to modify the deeds to the few remaining tracts. This was necessary to ensure that the remaining land would not be irrevocably lost to public recreation. Increasing residential development in the area re-enforces the need to preserve this land for future access to the lake and for lake-related recreation use.

Complaint, Court File No. 1, Exhibit D.

In May, 1981, plaintiff submitted a detailed plan concerning the development of its tract of land to TVA. The plan proposed that a portion of the tract be used for recreational purposes and that the remaining portion be used for residential purposes. After extensive meetings between plaintiff and TVA, the plan was rejected in a letter dated September 29, 1983. In the letter, Frank R. Holland, representing TVA's General Manager, W.F. Willis, wrote:

After carefully reviewing the matter with TVA staff and considering all views, I am convinced that approval of your conceptual plan and subsequent modification of the deed would not be in the best interest of the general public. I have concluded that the entire 126-acre tract should remain available for commercial recreation use and development for the benefit and enjoyment of future generations. Under TVA procedures applicable in this matter, the Director of Land and Forest Resources, with my advice, decides whether to recommend that the Board authorize deed modifications. As I have decided not to recommend the deed modification, no decision or action by the Board is required.

TVA staff remains willing to work with you to explore options for upgrading and expanding your present commercial recreation operation to meet the growing demands of the public as residential development of the surrounding area continues and available recreational opportunities decline.

Complaint, Court File No. 1, Exhibit G.

Plaintiff filed the instant action on September 25, 1984. Plaintiff's complaint alleges several grounds for invalidation of the deed restriction. Plaintiff claims that due to the zoning action taken by the City of Chattanooga and its officials, the restrictive covenant contained in the deed is void and unenforceable because it does not comport with 16 U.S.C. § 831c(k)(a); that TVA's refusal to grant plaintiff permission to utilize the property for residential purposes was arbitrary and capricious and unreasonably burdens the plaintiff; and that in refusing to modify the covenant, TVA has denied plaintiff equal protection and due process of law.

On February 8, 1985, plaintiff filed an amended complaint in which it claims that the restrictive covenant should be invalidated due to "changed circumstances" and

---

1. Plaintiff's complaint states that the parcel of land at issue is approximately 131 acres. The deed states that the parcel is "126. acres, more or less." (See Complaint, Exhibit A, p. 2).

also seeks declaratory judgment as to the meaning of the term "commercial recreation services" as that term is used in the deed. By way of its motion for summary judgment, TVA first contends that because the deed restriction is authorized by the Property Clause of the Constitution and the TVA Act, TVA's action in inserting the restrictive covenant in the deed and refusing to modify the restriction is not subject to judicial review. For the reasons stated, it is the Court's opinion that TVA's motion should be GRANTED.

### I. *Reviewability of TVA's Action.*

Plaintiff seeks judicial review of actions taken by TVA in inserting the restrictive covenant in the deed which transferred the subject property to plaintiff and its refusal to modify the restrictive covenant to allow the residential development of the tract. TVA contends that its actions relating to the deed were taken pursuant to congressional authority specifically delegated to it under the TVA Act, 16 U.S.C. §§ 831 *et seq.*, were within that authority and, therefore, are not judicially reviewable. Thus, before considering any other issues, the Court must determine whether the action taken by TVA relative to the tract of land involved here is judicially reviewable.

TVA is an agency performing wholly governmental services, and is an instrumentality of the United States. *PRI Pipe Supports v. Tennessee Valley Authority,* 494 F.Supp. 974, 975 (N.D.Miss.1980). Since the TVA is an agency of the federal government, the actions it takes pursuant to its statutory grant of authority are administrative in nature. Determination of whether such action is reviewable is governed by the general rules applied by courts in determining whether administrative agency action is reviewable.

The United States Supreme Court has recently spoken on the issue of when an administrative action is subject to judicial review. In *Block v. Community Nutrition Institute,* 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984), the Court clarified the standard to be applied in determining whether a governmental agency's actions would be subject to judicial scrutiny. While there is a general presumption favoring judicial review of administrative action, this presumption will not control where there is "clear and convincing evidence" of a contrary legislative intent. The Supreme Court stated that the presumption favoring judicial review will be overcome "whenever the congressional intent to preclude judicial review is 'fairly discernible in the statutory scheme.'" *Id.* at 351, 104 S.Ct. at 2457 (quoting *Data Processing Service v. Camp,* 397 U.S. 150, 157, 90 S.Ct. 827, 832, 25 L.Ed.2d 184 (1970) ). Elaborating on the application of the "clear and convincing evidence" standard in the context of preclusion analysis, the Court stated that the standard "is not a rigid evidentiary test but a useful reminder to courts that, where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of the administrative action is controlling." *Id.*

In the instant case, the Court concludes that the congressional intent to preclude judicial review of the decisions made by TVA in the instant case is fairly discernible from the Tennessee Valley Authority Act of 1933, 16 U.S.C. §§ 831 *et seq.* One of the important indicators of congressional intent to forfend reviewability is the existence of broad rather than circumscribed discretionary power. *Gatter v. Nimmo,* 672 F.2d 343, 345 (3rd Cir.1982) citing *Southern Railroad Company v. Seaboard Allied Milling Corporation,* 442 U.S. 444, 455, 99 S.Ct. 2388, 2394, 60 L.Ed.2d 1017 (1979). Review of the TVA Act and the legislative history underlying it reveals that TVA has been granted broad discretion to carry out the purposes of the TVA Act.

TVA is charged with "broad responsibilities" relating to "navigability, flood control, reforestation, marginal lands, and agricultural and industrial development of the whole Tennessee Valley." *United States, ex rel. TVA v. Welch,* 327 U.S. 546, 553, 66 S.Ct. 715, 718, 90 L.Ed. 843 (1946). Congress also recognized that TVA would have

an important role in the recreational development of the property under its control since it granted TVA, through 16 U.S.C. § 831c(k)(a), the power to convey real property to any person for the "purpose of recreation or use as a summer residence, or for the operation of such premises of pleasure resorts for boating, fishing, bathing, or any similar purpose." The Act does not delineate the methods or means by which TVA is to achieve its statutory purposes but merely states that TVA shall have "such powers as may be necessary or appropriate for the exercise of the powers herein specifically conferred upon the [TVA]." 16 U.S.C. § 831c(g). This statutory approach is consistent with the congressional intent to give TVA broad discretion in achieving its legislative objectives. This intent is indicated in a conference committee report upon the bill which became the Tennessee Valley Authority Act of 1933, which states:

> We have sought to set up a legislative framework, but not to encase it in a legislative straitjacket. We intend that the [TVA] shall have much of the essential freedom and elasticity of a private business corporation. We have indicated the course [TVA] shall take, but have not directed the particular steps it shall make.

H.R.Rep. No. 130, 73d Cong., 1 St.Sess. (1933). It is the Court's opinion that this broad grant of power is a clear indication of the congressional intent to preclude judicial review of TVA's actions relating to property it has an interest in under circumstances such as are presented here.[2] This conclusion is buttressed by the application of a test applied in several circuits for determining whether Congress intended the preclusion of judicial review of agency action.

## II. *The Hahn v. Gottlieb Factors.*

In *Hahn v. Gottlieb,* 430 F.2d 1243, 1249, (1st Cir.1970), the First Circuit Court of Appeals enunciated three principles for ascertaining the applicability of judicial review. Those principles are:

(1) Appropriateness of the issue for judicial review;

(2) The need for judicial supervision to safeguard plaintiffs' interests; and

(3) The impact of review on the agency's effectiveness in carrying out its mandate.

430 F.2d at 1249.

### A. *Appropriateness of Judicial Review.*

Taking first the appropriateness of judicial review, the Court is convinced that it should not meddle in the management of the vast property holdings of the TVA where the undisputed facts indicate that TVA is acting within its congressionally granted authority.[3] TVA is charged with

---

**2.** The Court also concludes that the portion of the Administrative Procedure Act providing for judicial review of agency action, 5 U.S.C. §§ 701 *et seq.,* does not apply here. Section 701(a)(2) states that the Act does not apply to agency action that is "committed to agency discretion by law." This is not to say that there would never be an occasion to question TVA's judgment in the use of its discretion as to what actions will promote the highest and best recreational uses of water resources in the Tennessee Valley. For example, the wisdom of TVA's recent conversion of the free flowing Little Tennessee River into yet another TVA impoundment under the guise of promoting "recreation" has been the subject of much, some say well deserved, criticism. However, there is a substantial difference between the public's right to criticize TVA, and subjecting TVA's actions in this area to judicial review. Certainly it is within TVA's discretion to place restrictions in its deeds, as it did in this case, requiring lakefront property to be used to provide commercial recreation services to the public, and for TVA to enforce those restrictions.

**3.** The Court notes in considering the appropriateness of judicial review of the instant matter that other action taken by TVA with regard to the property under its control has been found not to be subject to judicial review. In *Ferguson v. Electric Power Board of Chattanooga & TVA,* 378 F.Supp. 787 (E.D.Tenn.1974), *aff'd and opinion of district court adopted,* 511 F.2d 1403 (6th Cir.1975), this Court was asked to consider whether TVA's decisions regarding the rates it set under the TVA Act for the sale of electricity, which is TVA property, could be judicially reviewed. The Court held that in the absence of a clear violation of the purposes of the TVA Act, TVA's rate setting authority under the Act was not subject to judicial review. 378 F.Supp. at

the development of the properties that it has acquired and in doing so is responsible for establishing a developmental scheme of which the property involved in this action is but a minor component. In overseeing the development of its Tennessee Valley properties, the TVA must look at its program as a whole and determine what role property such as that involved here will play in the overall development scheme. It is the Court's opinion that it is inappropriate to closely scrutinize TVA's actions in the instant case where those actions are a part of a larger developmental scheme that is not under review. In light of the foregoing and considering that Congress intended that TVA be allowed to exercise broad discretion in controlling the development of the lands in which it has an interest, the Court concludes that the matter involved here is not appropriate for judicial review.

### B. *Need for Judicial Intervention.*

Next the Court considers the need for judicial intervention to safeguard the plaintiff's interests. Under the facts of the instant case, the need for judicial intervention to protect plaintiff's interests is not substantial. Plaintiff purchased the property with notice of the existence of the restrictive covenant contained in the deed. Plaintiff knew of the restriction which the covenant imposed but now does not desire to abide by it. This is not a case where agency action has infringed upon plaintiff's rights by taking something to which it is entitled but, rather, one where TVA has determined that plaintiff should only have what it bargained for. As was stated in *Tennessee Valley Authority v. Lenoir City*, 72 F.Supp. 457, 461 (E.D.Tenn.1947):

If the purchaser does not wish to take the property with the conditions attached by Congress, his remedy is to decline to purchase it. If he accepts the benefits of

the contract, he must comply with its conditions.

Plaintiff requested TVA to modify the deed restriction and, after giving the matter careful consideration, TVA denied the request as it had the right to do. Plaintiff still retains all of the rights in the property that it has always had. Thus, the Court does not see this as a proper case for judicial intervention to safeguard plaintiff's interests.

### C. *Impact of Judicial Review on Agency Effectiveness.*

Last, the Court considers whether allowing judicial review of this matter and similar matters will adversely impact the agency's effectiveness in carrying out its mandate. It is the Court's opinion that allowing judicial review will have that result. Close judicial scrutiny of TVA action in refusing to modify deed restrictions in contracts voluntarily entered into by the parties may unnecessarily impede agency action by causing the agency to employ a more formalized decision making process than is already in place. *See Hahn v. Gottlieb*, 430 F.2d 1243, 1250 (1st Cir.1970).

In light of the foregoing the Court concludes that the action taken by TVA in this case was of a discretionary nature which is not subject to judicial review. On this basis the Court will GRANT TVA's motion for summary judgment. The Court's disposition of this issue obviates the need to consider other issues raised by the parties regarding the TVA deed restriction.

Plaintiff's complaint against the City of Chattanooga and the City's Board of Commissioners is somewhat obscure as plaintiff alleges that the City acted arbitrarily and capriciously by rezoning the property while simultaneously alleging that TVA's deed restriction is void and unenforceable because it conflicts with the City zoning ordi-

789. The Court also notes that actions by other government agencies, such as the United States Forest Service, regulating the use of federal property subject to the agencies' supervision has been held non-reviewable. *See Ness Investment Corp. v. United States Department of Agriculture,*

*Forest Service,* 512 F.2d 706, 716 (9th Cir.1975). (Forest Service's denial of a request by a successor group of investors for a special use permit allowing the operation of a resort in a national forest held to be non-reviewable.)

nance. Since the restrictive covenant in TVA's deed may not be overridden by a local zoning ordinance, it appears that any claim which the plaintiff may have against the City or its commissioners is moot. U.S. Const. art. VI, cl. 2; *United States v. San Francisco*, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050 (1940).