Donna W. SHERWOOD,
et al., Plaintiffs,

v.

TENNESSEE VALLEY AUTHORITY,
Defendant.

No. 3:12–CV–156.

United States District Court,
E.D. Tennessee,
at Knoxville.

Feb. 19, 2013.

Sheila Marie Needles, Donald K. Vowell, Vowell And Associates, Knoxville, TN, for Plaintiff.

Brent R. Marquand, Edwin W. Small, Richard E. Riggs, David D. Ayliffe, Tennessee Valley Authority, Knoxville, TN, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

THOMAS A. VARLAN, Chief Judge.

This civil action is before the Court on the following motions: defendant's Motion to Dismiss Counts I, III, and IV of the Second Amended Complaint [Doc. 65],[1] Plaintiffs' Motion to Certify Question of State Law to the Tennessee Supreme Court [Doc. 81],[2] Plaintiffs' Motion for

---

1. Plaintiffs filed a response [Doc. 97], and defendant replied [Doc. 100].

2. Defendant filed a response [Doc. 85], and plaintiffs replied [Doc. 86]. Defendant also filed a sur-reply with permission of the Court [Docs. 86, 98].

Leave to File Third Amended Complaint and to Join Additional Plaintiffs [Doc. 83],[3] and defendant's Motion to Dismiss Count I of the Second Amended Complaint for Lack of Subject Matter Jurisdiction [Doc. 132].[4] The Court has considered the relevant filings with respect to each motion as well as the relevant law, and for the reasons that follow, the Court will **GRANT** defendant's Motion to Dismiss Counts I, III, and IV of the Second Amended Complaint [Doc. 65], **DENY** Plaintiffs' Motion to Certify Question of State Law to the Tennessee Supreme Court [Doc. 81], **GRANT IN PART AND DENY IN PART** Plaintiffs' Motion for Leave to File Third Amended Complaint and to Join Additional Plaintiffs [Doc. 83], and **DENY** defendant's Motion to Dismiss Count I of the Second Amended Complaint for Lack of Subject Matter Jurisdiction [Doc. 132].

## I. Background [5]

Plaintiffs commenced this action on or about April 3, 2012, as a result of TVA's allegedly new vegetation management policy, which plaintiffs submit requires the removal of all trees, by cutting or using herbicide, that have a mature height of fifteen feet or taller within its 15,900 mile transmission line right-of-way [Doc. 1].[6] Plaintiffs are citizens and residents of Knox, Hamilton, and Hamblen County, Tennessee [Doc. 62 ¶ 1]. Some plaintiffs—Donna W. Sherwood, Vance Sherwood, and Jerome Pinn—are homeowners in a residential subdivision in Knox County known

as Westminster Place [*Id.* ¶¶ 1, 4]. Plaintiffs Anthony Billingsley and Jennifer Peet are homeowners in the Spring Valley residential subdivision in Hamilton County [*Id.*]. Defendant Tennessee Valley Authority ("TVA") "maintains high voltage electric transmission lines to conduct electricity from sites where the electricity is generated to sites where the electricity is consumed, throughout a seven state region[,] including Tennessee[,]" Alabama, Mississippi, Kentucky, Georgia, North Carolina, and Virginia [*Id.* ¶¶ 6, 11].

Plaintiffs allege that TVA maintains the transmission lines on both public property as well as private property pursuant to easements [*Id.* ¶ 6]. In particular, plaintiffs claim "predecessors in interests of the Westminster Place" granted TVA an easement in 1937 that allows TVA "to use the right of way across Westminster Place for the sole purpose of maintaining and operating an electric power transmission line and telephone/telegraph lines" (the "1937 Easement") [*Id.* ¶ 7]. A similar easement was executed with respect to the Spring Valley property in 1963 (the "1963 Easement") [*Id.* ¶ 8]. According to plaintiffs, the easement agreements allow TVA "to clear timber on the subject properties, but only for purposes related to constructing, maintaining and operating an electric power transmission line or telephone line" [*Id.* ¶ 10].

Plaintiffs allege that TVA has recently adopted a new policy, pursuant to which it

---

**3.** Defendant filed a response [Doc. 87], and plaintiffs replied [Doc. 99].

**4.** Plaintiff filed a response [Doc. 145], and defendant replied [Doc. 146].

**5.** For the purposes of a motion to dismiss, the Court takes plaintiff's factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all

the factual allegations contained in the complaint" (citations omitted)). In addition, the Court discusses in this section only the relevant facts alleged in the second amended complaint, which is the operative pleading at this time. The Court considers plaintiffs' motion to file a third amended complaint, *supra,* Section IV.

**6.** Plaintiffs filed an amended complaint on May 2, 2012 [Doc. 8], and a second amended complaint on June 12, 2012 [Doc. 62].

will "cut, clear and/or remove any and all trees on its easement/rights of way that are 15 feet or tall or taller, or might grow to be more than 15 feet tall, throughout the seven state region that it serves" whether or not they "interfere with or pose a danger to the transmission lines" [*Id.* ¶¶ 11–12]. According to plaintiffs, this new policy will "effectively result in a clear-cut of all trees in the TVA rights-of-way, because there are very few naturally occurring trees in the 7 state region that reach a mature height of no more than 15 feet" [*Id.* ¶ 32]. They submit that TVA will cut down "millions of trees" pursuant to the new policy [*Id.* ¶ 36]. Plaintiffs allege this is in contrast to a policy in place since 1933, pursuant to which TVA allowed property owners to trim or prune their trees to maintain a safe distance between them and the transmission lines, and if the property owners did not do so, TVA would remove them [*Id.* ¶ 55].

With respect to plaintiffs' properties in particular, plaintiffs assert that TVA intends on removing approximately 135 trees in Westminster Place, including 89 trees located near a "shaded pond ecosystem[,]" as well numerous other trees [*Id.* ¶¶ 13, 15]. It is alleged that none of these trees pose a present danger to the transmission lines, and any danger could be "eliminated by reasonable trimming" [*Id.* ¶¶ 17–20; *see also id.* ¶¶ 25–26, 33, 38–39]. Also, plaintiffs state that many of the trees subject to the new policy have been present for decades [*Id.* ¶ 39].

Plaintiffs claim the effect of the new policy will be to diminish the utility and value of their property [*Id.* ¶¶ 27–29]. They also claim the removal of trees will destroy natural barriers or buffers between residential neighborhoods and businesses and "noisy or intrusive man-made structures" [*Id.* ¶ 34]. According to plaintiffs, TVA has no plans on replanting any trees or remediate, except where required

by law, and so the burden to do so will fall on the landowners [*Id.* ¶ 40].

In addition, plaintiffs claim that the use of herbicides to clear the trees will be damaging in that the herbicides will "find their way into the Tennessee River Valley water table" and could cause birth defects [*Id.* ¶ 43]. The removal of trees, according to plaintiffs, will also destroy "hundreds of thousands, if not millions, of birds' nests" and have an adverse effect upon migratory birds [*Id.* ¶¶ 44–50]. Likewise, the implementation of the alleged new policy will damage the ecosystem at Westminster place and other wetland areas [*Id.* ¶¶ 51–52]. Plaintiffs further claim the cutting of trees will "lead to a material increase in carbon dioxide ($CO_2$) in the atmosphere, doing damage to the environment" and damage the groundwater ecosystem because forests "provide natural filtration and storage systems that process nearly two-thirds of the water supply in the United States" [*Id.* ¶¶ 58–59].

In light of these allegations, plaintiffs bring four claims, designated as "counts": an injunction based upon common law (easements, trespass, conversion of property, and taking of property without compensation) ("Count I"); declaratory and injunctive relief based upon defendant's failure to make the environmental impact statement required by the National Environmental Policy Act ("NEPA") prior to implementing the new policy ("Count II"); declaratory and injunctive relief under the Administrative Procedure Act ("APA") for defendant's failure to engage in notice and comment rulemaking ("Count III"); and declaratory and injunctive relief under the APA for arbitrary and capricious action ("Count IV") [*Id.* ¶¶ 94–125]. Plaintiffs also seek to certify their claims as a class action [*Id.* ¶¶ 126–136].

## II. Defendant's Motion to Dismiss Count I of the Second Amended Complaint for Lack of Subject Matter Jurisdiction [Doc. 132]

In Count I of the second amended complaint, plaintiffs claim that TVA's " 'new policy' and proposed cutting of the trees at the plaintiffs' properties, and any common areas ... exceeds the scope and purpose of the easement, violates the plaintiffs' rights, and would constitute a trespass, a private nuisance, conversion of property, and a taking of property without compensation" [Doc. 62 ¶ 94]. Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, TVA moves the Court to dismiss Count I for lack of subject matter jurisdiction [Doc. 132]. As grounds, TVA contends that Count I was not, but should have been, brought under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a (2006), and even if it had been, it would be barred by the QTA's twelve-year statute of limitations [*Id.*].

### A. Standard of Review

■■■ A complaint may be dismissed pursuant to Rule 12(b)(1) for lack of jurisdiction. *See* Fed.R.Civ.P. 12(b)(1). Under Rule 12(b)(1), a motion to dismiss based on lack of subject matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.,* 410 F.3d 879, 881 (6th Cir.2005). "A *facial* attack is a challenge to the sufficiency of the pleading itself" and "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *United ed States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994) (alteration in original) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 235–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "A *factual* attack, on the other hand, is ... a challenge to the factual existence of subject matter jurisdiction." *Id.* at 598 (alteration in original). With a factual attack,

"no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citation omitted). In reviewing factual motions, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990). Regardless of the type of attack, plaintiff bears the burden of proving that jurisdiction exists. *Gorno Bros.,* 410 F.3d at 881; *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990).

### B. Analysis

■■■ TVA asserts that this Court does not have jurisdiction with respect to Count I because it "constitutes a challenge to the Government's title to recorded easement rights" and "the exclusive means by which [p]laintiffs can assert such a challenge is by filing an action against the United States pursuant to the QTA" [Doc. 133 (emphasis omitted) ]. Plaintiffs disagree, arguing that the QTA does not apply in this case because they "are not challenging whether the United States holds title to real property or the transmission line easements at issue in this case, nor are they challenging the fact that TVA may use and maintain those easements for the safe and reliable transmission of electricity"; rather, they "are asking for judicial interpretation and enforcement of the easements in question" [Doc. 145].

■■■ The QTA provides that "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a(a). It is "the

exclusive basis for jurisdiction over suits challenging whether the United States holds title to real property," *Burlison v. United States*, 533 F.3d 419, 424 (6th Cir. 2008) (citing *United States v. Mottaz*, 476 U.S. 834, 841, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986)), and "is intended to settle actual disputes about who owns what land," *Fuqua v. United States*, No. 5:09–CV–212, 2010 WL 1883468, at *2 (W.D.Ky. May 11, 2010) (citation and internal quotation marks omitted).

■ The Sixth Circuit has determined that the plain language of the QTA "clearly limits its scope to adjudications in which the title or ownership of real property is in doubt." *Saylor v. United States*, 315 F.3d 664, 670 (6th Cir.2003). Following this directive, a sister district court has determined that "any challenge as to the scope of an easement is not a challenge to title but rather an attempt to reform the deed" and therefore lies outside the purview of the QTA. *Fuqua*, 2010 WL 1883468, at *3.

The Court agrees with plaintiffs that here, as in *Fuqua*, the dispute is about the scope of the easements in question; it is not about the validity of the easements nor is it a dispute about who owns what land. *See Fuqua*, 2010 WL 1883468, at *3–4 (finding plaintiff's request for the court to expand the government's rights set forth in a restrictive covenant did not present a dispute over title that would grant the court jurisdiction under the QTA). Count I acknowledges "TVA's right to safely maintain and operate its transmission lines" pursuant to the easement but alleges that TVA's new policy "exceeds the scope and purpose of the easement" [Doc. 62 ¶ 94]. Accordingly, under Sixth Circuit precedent,[7] the Court must deny TVA's motion to dismiss for lack of subject matter jurisdiction.[8] If, however, a dispute over title does arise during the course of this litigation, the Court will be obligated to reassess this determination. *See, e.g., Robinson v. United States*, 586 F.3d 683, 686 n. 3 (9th Cir.2009) (remanding action to the district court because the QTA does not apply to a suit that properly sounds in tort and noting that the district court would have to decline jurisdiction if a dispute over title arose during the development of the litigation).

7. The Court is mindful of the case law from outside this Circuit cited by TVA, including *Kootenai Canyon Ranch, Inc. v. United States Forest Service*, 338 F.Supp.2d 1129, 1133 (D.Mont.2004), which suggests a different result. *Kootenai* involved a dispute about the scope of a right-of-way easement owned by the government and the court found the initial prerequisites for QTA jurisdiction were met: "the government has an easement in land for which the Plaintiff owns the servient estate, and the parties dispute the scope of that easement." 338 F.Supp.2d at 1133. *See also Robinson v. United States*, 586 F.3d 683, 686 (9th Cir.2009) ("This court has repeatedly held that both disputes over the right to an easement and suits seeking a declaration as to the scope of an easement fall within the purview of the QTA." (citing cases)); *City of N. Las Vegas v. Clark Cnty.*, No. 2:11–CV–00944–PMP–PAL, 2011 WL 3472481, at *6 (D.Nev.

Aug. 9, 2011) ("A dispute over the existence or scope of an easement will satisfy the requirement that there be a dispute over title to real property."). This case law, however, "directly conflicts with the Sixth Circuit's statements in *Saylor*, which this Court is bound to follow[,]" that there is "no reason to engage in an examination of the [QTA's] legislative history or policy preferences when the plain text ... clearly limits its scope to adjudications in which the title or ownership of real property is in doubt." *Fuqua v. United States*, 2010 WL 2801880, at *3 (W.D.Ky. July 14, 2010) (quoting *Saylor*, 315 F.3d at 670) (internal quotation marks omitted).

8. Because TVA's motion focuses solely on QTA jurisdiction, the Court declines to address the miscellaneous arguments concerning jurisdiction raised in plaintiffs' response brief [*See* Docs. 133, 145, 146].

## III. Defendant's Motion to Dismiss Counts I, III, and IV of the Second Amended Complaint [Doc. 65]

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, TVA moves the Court to dismiss Counts I, III, and IV of the second amended complaint, asserting these counts fail to state claims upon which relief can be granted [Doc. 65].[9]

### A. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n. 1 (6th Cir.2004), requiring only " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the ... claim is and the grounds upon which it rests,' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir.2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "Determining whether a complaint states a plausible claim for relief will [ultimately] ... be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

### B. Count I

In Count I, plaintiffs claim that TVA's " 'new policy' and proposed cutting of the trees at the plaintiffs' properties, and any common areas ... exceeds the scope and purpose of the easement, violates the plaintiffs' rights, and would constitute a trespass, a private nuisance, conversion of property, and a taking of property without compensation" [Doc. 62 ¶ 94]. TVA asserts that Count I should be dismissed because the easement grants conveyed to the government the express perpetual right to clear any trees located within the rights-of way.

#### 1. Preliminary Issues

■ As an initial matter, TVA claims that all of the legal theories set forth in Count I (i.e., breach of easement, trespass, private nuisance, and conversion of property) are grounded in property law. While plaintiffs disagree with this contention, the Court agrees with TVA because, regardless of the named theories, plaintiffs are challenging the scope of the easement rights. And although plaintiffs assert that their private nuisance claim sounds in tort law and is therefore distinguishable, an

---

9. TVA does not move to dismiss Count II, the NEPA claim [Doc. 66]. Count II, however, is the subject of a pending motion for summary judgment [Doc. 129], which will be addressed in a separate memorandum opinion and order.

easement owner cannot be held liable in private nuisance for the exercise of express easement rights. *See Quintain Dev., LLC v. Columbia Natural Res., Inc.,* 210 W.Va. 128, 556 S.E.2d 95, 103–04 (2001) ("[T]he actions . . . of the owner of an easement, which otherwise meet the legal definition of a nuisance, do not create a nuisance as to the estate servient to the easement unless those actions . . . exceed the scope of the easement."); *Frizzell v. Murphy,* 19 App.D.C. 440, 1902 WL 19685, at *4 (D.C.Cir.1902) (same); Restatement (First) of Property § 451 cmt. a (1944) (recognizing that an easement may entitle the easement owner to do acts which, "were not for the easement, would constitute a nuisance"). The Court analyzes TVA's motion to dismiss Count I in light of this determination.

■ Another preliminary matter is plaintiffs' assertion that "TVA's electrical operations are commercial in nature, not governmental" [Doc. 97 (citation omitted)]. The Court disagrees in light of precedent from this Court. *See Mays v. Tenn. Valley Auth.,* 699 F.Supp.2d 991, 1009–10 (E.D.Tenn.2010) ("Such conduct [electric power production and distribution] in a federally created agency and instrumentality-the exercise of a statutorily authorized purpose-constitutes the exercise of a 'governmental function'. . . ."); *Quality Tech. Co. v. Stone & Webster Eng'g,* 745 F.Supp. 1331, 1339 (E.D.Tenn.1989) ("As has been declared by many courts, the TVA is a federal government corporation—'an agency performing wholly governmental services, and is an instrumentality of the United States.'"); *Tenn. Valley Auth. v. Mason Coal, Inc.,* 384 F.Supp. 1107, 1115 (E.D.Tenn.1974) (same); *Ramsey v. United Mine Workers of Am.,* 27 F.R.D. 423, 425 (E.D.Tenn.1961) (same).

**2. Motion for Certification [Doc. 81]**

Before turning to the merits of TVA's argument, the Court must address a related motion filed by plaintiffs to certify the following question to the Tennessee Supreme Court:

Whether, pursuant to the grants of easement by the plaintiffs' predecessors in interest, TVA has the right to cut down trees in its right of way even if the trees do not interfere with or endanger the transmission line.

[Doc. 81]. TVA opposes this request, claiming federal law, not state law, applies to the government's easement rights.

■ " 'The decision whether or not to utilize a certification procedure lies within the sound discretion of the district court.' " *Pennington v. State Farm Mut. Auto. Ins. Co.,* 553 F.3d 447, 449–50 (6th Cir.2009) (quoting *Transam. Ins. Co. v. Duro Bag Mfg. Co.,* 50 F.3d 370, 372 (6th Cir.1995)). It is appropriate "when the question is new and state law is unsettled." *Id.* (citation and internal quotation marks omitted). Federal courts, however, "will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Id.* (citation and internal quotation marks omitted).

■ The Court finds that certification is inappropriate for two reasons.

First, " 'when the government acquires property pursuant to a federal law that does not specify the appropriate rule of decision, the Supreme Court has held that federal common law applies to property disputes.' " *Canova v. Shell Pipeline Co.,* 290 F.3d 753, 756 (5th Cir.2002) (citations omitted); *United States v. Little Lake Misere Land Co.,* 412 U.S. 580, 594–96, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973). A court may borrow state-law principles as federal law, however, so long as those principles

are not hostile to federal interests. *Id.* Plaintiffs assert that "the usual rule for easements held by federal agencies ... is to follow state law" [Doc. 86], but the plethora of cases cited by plaintiffs establish no such rule and are inapposite for various reasons, including because either the federal government was not a party or there was no dispute as to the application of state law.

Second, Rule 23 of the Tennessee Supreme Court permits this Court to certify to the Tennessee Supreme Court only those "questions of law of [Tennessee] which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." While the parties have not identified any controlling Tennessee Supreme Court precedent, TVA has identified a decision of the Court of Appeals of Tennessee that is on point. In *Columbia Gulf Transmission Co. v. The Governors Club Property Owners Association,* which will be addressed later, the Court of Appeals of Tennessee found:

> [W]hen the terms of an easement by a grant are specific, they are decisive. Furthermore, the nature and extent of the easement is derived from the language of the grant .... we do not have the latitude to balance the burdens that may be imposed upon the parties.

No. M2005–01193–COA–R3–CV, 2006 WL 2449909, at *5 (Tenn.Ct.App. Aug. 21, 2006) (citations omitted). In doing so, the court relied upon *Foshee v. Brigman,* 174 Tenn. 564, 129 S.W.2d 207 (1939), a Tennessee Supreme Court decision. Because plaintiffs have not provided the Court with any Tennessee law that contradicts this directive from *Columbia Gulf,* the Court finds it unnecessary to certify the question presented by plaintiffs.

Accordingly, for these reasons, the Court will deny Plaintiffs' Motion to Certify Question of State Law to the Tennessee Supreme Court [Doc. 81].

### 3. Analysis

"An easement is a right to some lawful use of the real property of another." *Columbia Gulf,* 2006 WL 2449909, at *3 (citations omitted). It confers upon the easement holder "an enforceable right to use that real property for a specified use." *Id.* (citations omitted). Although an easement can be created several ways, it may be created by express grant, as was the case with the 1937 Easement and the 1963 Easement. *See Burlison,* 533 F.3d at 426 (recognizing ways in which an easement may be created). Pursuant to the 1937 Easement, TVA acquired

> the perpetual right to enter upon said easement and right-of-way and to erect, maintain, repair, rebuild, operate, and patrol one or more electric power transmission lines, .... including ... the further right to clear said right-of-way and keep the same clear of brush, timber, inflammable structures, and fire hazards.

[Doc. 62–1]. Pursuant to the 1963 Easement, TVA acquired

> the perpetual right to enter at any time and from time to time and to erect, maintain, repair, rebuild, operate, and patrol one line of poles or transmission line structures with sufficient wires and cables for electric power circuits and telephone circuits, and all necessary appurtenances, in, on, over, and across said right of way, together with the right to clear said right of way and keep the same clear of brush, trees, buildings, and fire hazards; and to remove danger trees, if any, located beyond the limits of said right of way.

[Doc. 62–2].

"When an easement is created by express grant, as in an agreement, the

extent and any conditions on the easement must be determined by the grant, which is found in the language of the agreement." *Columbia Gulf,* 2006 WL 2449909, at *3 (citations omitted). "[T]he easement holder's use of the easement[, therefore, is] confined to the purpose stated in the grant of the easement" and the holder "cannot use the easement for a purpose beyond its intended use." *Id.* at *3–4 (citations omitted). Put another way:

> [W]hen the terms of an easement by a grant are specific, they are decisive. Furthermore, the nature and extent of the easement is derived from the language of the grant .... we do not have the latitude to balance the burdens that may be imposed upon the parties.

*Id.* at *5 (citations omitted).

██ Here, although plaintiffs contend there must be a rational connection between TVA's clearing activities and the transmission of electric power, the language of each grant is unambiguous. Each grant allows TVA the right to clear, or remove,[10] brush, timber, and trees, and this right is "perpetual."[11] No other meaning can be ascribed, and there is no requirement that a rational connection be established. Thus, TVA's allegedly new policy and proposed "clear-cutting" of the trees does not exceed the scope and purpose of the grants. Further, because the language is unambiguous, there is no need to balance the burdens that may be imposed upon the parties.

This conclusion is bolstered by *Evans v. Tennessee Valley Authority,* No. 90–5058, 1991 WL 1113 (6th Cir. Jan. 8, 1991). Underlying the dispute in that case was TVA's purchase of a 75–foot transmission line easement in 1936 that conveyed to the United States "the perpetual right to enter and to erect, maintain, repair, rebuild, operate and patrol one or more electric power transmission lines ... including the right to remove brush, timber, and danger trees, whether located on or off said right-of-way, interfering with the said lines." *Id.* at *1. In 1989, TVA informed a landowner that TVA soon would be exercising its easement rights to cut down "danger trees outside of the right-of-way." *Id.* The landowner objected and filed suit in the Middle District of Tennessee seeking an injunction to prevent TVA from cutting any danger trees located outside of the right-of-way. *Id.* The landowner argued that TVA could protect its interests and minimize the impact to the landowner by trimming danger trees (so they would be below the danger tree height) instead of cutting them. *Id.* The district court granted an injunction, finding the easement granted only the right to trim danger trees on plaintiff's property and not the right to cut them down completely.

The Sixth Circuit reversed, holding the clear language of the easement grant defined the government's rights. The Sixth Circuit noted that "[i]t is a tortured construction indeed that interprets the word 'remove' to be limited to trimming." *Id.* at *2. The Sixth Circuit further held "that the right to 'remove' is equivalent to the right to cut down," that the easement grant clearly conveyed to the government the right to remove danger trees, not merely trim the trees to prevent them from being a danger, and that the trial court's injunction which rebalanced the rights between the government and the landowner was an

---

10. *See* Webster's Third New International Dictionary, Unabridged (2002) (defining "clear" as "to remove from (as a space) all that occupies or encumbers or that impedes or restricts use, passage, or action" and including as an example "<*clear* land of trees and brush>").

11. *See* Webster's Third New International Dictionary, Unabridged (2002) (defining "perpetual" as "continuing forever").

"obvious attempt at a little 'fireside equity[,]'" constituting error. *Id.* at *1.[12]

Accordingly, the Court finds plaintiffs' Count I fails to state a claim upon which relief may be granted. Count I will be dismissed from this action.

## C. Count III

■ Pursuant to Count III, plaintiffs assert that "TVA violated [§ 553 of the APA] by failing to engage in notice and comment rulemaking before adopting its 'new policy'" [Doc. 62 ¶¶ 115, 116]. TVA contends that Count III fails to state a claim because the APA expressly excludes from its rule-making procedures matters relating to public property or contracts, and here, the challenged actions "directly involve both public property (the Government's easement rights) and contracts (the easement agreements)" [Doc. 66].

■ The APA provides that interested persons be given notice of proposed rules and an opportunity to comment. *See* 5 U.S.C. § 553. Notice and comment need not be given, however, "to the extent that there is involved ... a matter relating ... to public property, ... or contracts." 5 U.S.C. § 553(a)(2). It appears that this exception is read narrowly and is "operative only to the extent that any one of the enumerated categories is clearly and directly involved in the regulatory effort at issue." *Baylor Univ. Med. Ctr. v. Heckler,* 758 F.2d 1052, 1058–59 (5th Cir.1985) (internal quotation marks omitted) (quoting *Humana of S.C., Inc. v. Califano,* 590 F.2d 1070, 1082 (D.C.Cir.1978)).[13]

Plaintiffs argue that this exception does not apply to TVA's new rule because the "new 15-foot rule and TVA's effective removal of virtually all trees from the easements" is an attempt "to destroy and regulate private property" [Doc. 97]. In support, plaintiffs cite case law indicating that easements in Tennessee are not real property but non-possessory interests and confer upon the holder only a right-of-way.

While it appears that easements are non-possessory interests in Tennessee, *see Rogers v. Roach,* No. M2011–00794–COA–R3–CV, 2012 WL 2337616, at *6 (Tenn.Ct. App. June 19, 2012) ("An easement is a right an owner has to some lawful use of the real property of another. One who possesses an easement has an enforceable right to use real property that belongs to another for a specific use. An easement does not confer an interest in the owner-

---

12. *Accord Sack v. FirstEnergy Corp.,* 2008 WL 4922511, at *1 (N.J.Super.Ct.App.Div. Nov. 19, 2008) ("When terms [of an easement] clear and unambiguous our courts apply them as written without further inquiry."); *Duke Energy Corp. v. Malcolm,* 178 N.C.App. 62, 630 S.E.2d 693, 697 (2006) ("In the instant case, the defendant's use of the land, *i.e.* the planting of trees ... within the dimensions of the easement, is necessarily inconsistent with the enumerated right of the power company to keep the land clear of such trees."); *Beaumont v. FirstEnergy Corp.,* No. 2004–G–2573, 2004 WL 2804801, at *7 (Ohio Ct.App. Sept. 30, 2004) (finding propriety of electric companies' actions of removing trees from easement premises was to be measured in accordance with the specific language of the easement, not against an objective standard of reason-

ableness); *DeWitt Cnty. Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 100–101 (Tex.1999) (finding that easement unambiguously gave company right to remove and trim trees within right-of-way); *Hanner v. Duke Power Co.,* 34 N.C.App. 737, 738–39, 239 S.E.2d 594, 595 (1977) ("The contract specifically gave defendant the right to clear trees from the right-of-way, and plaintiffs' right to grow 'crops' was specifically limited by this provision. By the terms of the contract, defendant did not, by agreeing at various times to allow trees to remain, waive its right as stated in the contract.").

13. Plaintiffs did not direct the Court to any Sixth Circuit law so holding, and the Court is not aware of any similar Sixth Circuit decision.

ship of the underlying real property." (quotation marks and citations omitted)), the Court cannot overlook that the allegedly new rule directly relates to the safe distribution of electric energy, which is public property,[14] *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 330, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (noting that electric energy produced by TVA is "property belonging to the United States"). Hence, the exception set forth in § 553(a)(2) applies, and TVA was not required to provide notice and the opportunity to comment.

Moreover, while some of the case law cited by TVA in support of its position does not go far in aiding TVA's argument, TVA directs the Court to *Story v. Marsh*, 732 F.2d 1375 (8th Cir.1984), which involved the United States Army Corps of Engineers' modification of its plan for operation of the New Madrid Floodway during high flood stages on the Mississippi River. The modified plan called for artificial crevassing of frontline levees and inundation of the Floodway, across which the government had flowage easements. The Eighth Circuit held that "the plan is exempt from the notice and hearing requirements under § 553(a)(2)" because "operation of the Floodway involves public property" and is an "action to be taken pursuant to flowage easements owned by the government." 732 F.2d at 1384. Likewise, here, the allegedly new rule involves public property and action to be taken pursuant to the easements owned by the government that allow the government to clear the rights-of-way of brush and other matter.[15]

Accordingly, the Court finds plaintiffs' Count III fails to state a claim upon which relief may be granted. Count III will be dismissed from this action.

### D. Count IV

■■■ Pursuant to Count IV, plaintiffs claim that "TVA's decision to implement its 'new policy' . . . was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" [Doc. 62 ¶ 121]. TVA contends that the "APA's judicial review provisions are not applicable because (1) any person suffering a legal wrong because of TVA's decision has other adequate remedies, and (2) the decision was committed to TVA's discretion" [Doc. 66]. Because the Court finds TVA's second assertion is dispositive, it does not address TVA's claim that there are other adequate remedies.

■■■■ Under the APA, an aggrieved party may seek judicial review of final agency action if there are no other adequate mechanisms for review, and review has not been foreclosed by statute or "committed to agency discretion by law." 5 U.S.C. § 701(a). An agency action is committed to agency discretion by law if the statute does not provide a "meaningful standard against which to judge the agen-

---

**14.** Plaintiffs do not dispute "that the electricity being generated by TVA and transmitted through its transmission lines which run over the easements is federal property. . . ." [Doc. 97].

**15.** Plaintiffs bring to the Court's attention the fact that TVA has engaged in notice and comment rulemaking with regard to a rule involving water flowage easements, namely one that regulates what structures and vegetation property owners may maintain in the flowage easements [Doc. 97]. *See Approval of Con-* *struction in the Tennessee River System; Regulation of Structures; Residential Related Use on TVA–Controlled Residential Access Shoreland and TVA Flowage Easement Shoreland,* 68 Fed.Reg. 46930 (Aug. 7, 2003). While the Court finds it somewhat inconsistent that TVA would engage in notice and comment rulemaking with respect to such rule and not with respect to the allegedly new vegetation management policy, that TVA engaged in notice and comment rulemaking with regard to that rule is not dispositive of the issue before the Court.

cy's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). "A meaningful standard does not exist where the applicable law is so broadly drawn that the court has no standard or substantive priorities against which to measure an agency's discretion." *Madison–Hughes v. Shalala,* 80 F.3d 1121, 1127 (6th Cir.1996) (citing *Cnty. Action of Laramie Cnty., Inc. v. Bowen,* 866 F.2d 347, 353 (10th Cir.1989)).

The easements at issue here were acquired pursuant to the TVA Act and were "entrusted to [TVA] as the agent of the United States to accomplish the purposes of [the TVA Act]." 16 U.S.C. § 831c(h). These purposes include "the generation and distribution of electric power." *United States ex rel. Tenn. Valley Auth. v. Bagwell,* 698 F.Supp. 135, 136 (M.D.Tenn. 1988) (citing 16 U.S.C. § 831d(*l*)). "The Act does not delineate the methods or means by which TVA is to achieve its statutory purposes but merely states that TVA shall have 'such powers as may be necessary or appropriate for the exercise of the powers herein specifically conferred upon the [TVA].'" *Gold Point Marina, Inc. v. Tenn. Valley Auth.,* 635 F.Supp. 39, 43 (E.D.Tenn.1986) (citing 16 U.S.C. § 831c(g)). "This statutory approach is consistent with the congressional intent to give TVA broad discretion in achieving its legislative objectives." *Id.* (noting this intent is indicated in a conference committee report: "We have sought to set up a legislative framework, but not to encase it in a legislative straitjacket. We intend that the [TVA] shall have much of the essential freedom and elasticity of a private business corporation. We have indicated the course [TVA] shall take, but have not directed the particular steps it shall make.") (citation omitted).

Plaintiffs assert that TVA's new policy is a radical and irrational departure from its former policy to allow property owners to have trees that exceeded fifteen feet in height within the transmission line easements and to allow property owners to trim their trees. They claim that this subjects TVA's actions to judicial review under *INS v. Yang,* 519 U.S. 26, 117 S.Ct. 350, 136 L.Ed.2d 288 (1996). *Yang* provided that even though an agency's discretion may be unfettered at the outset, if an agency "announces and follows ... a general policy by which its exercise of discretion will be governed, an irrational departure from that policy ... could constitute action that must be overturned as arbitrary [or] capricious." 519 U.S. at 32, 117 S.Ct. 350. The Supreme Court noted, however, that "an avowed alteration of" a former policy would not subject the agency to review. *Id.* Here, the allegations of the complaint indicate that is the case.

Accordingly, because the decision at issue was committed to TVA's discretion, the Court will dismiss Count IV for failure to state a claim upon which relief may be granted.

## IV. Plaintiffs' Motion for Leave to File Third Amended Complaint and to Join Additional Plaintiffs [Doc. 83]

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, plaintiffs request leave to amend their complaint "to add additional plaintiffs pursuant to Rule 20(a), making the same general averments as the original plaintiffs have made, except for the particulars of their individual properties, to allege additional facts including additional facts about the plaintiffs' specific properties, and to assert additional legal claims" [Doc. 83].

### A. Standard of Review

 "[A] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.

R.Civ.P. 15(a)(2). "The court should freely give leave," however, "when justice so requires." *Id.* Leave is appropriate "[i]n the absence of any apparent or declared reason," which may include, but is not limited to, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Leary v. Daeschner,* 349 F.3d 888, 905 (6th Cir.2003) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *see also Courie v. Alcoa Wheel & Forged Prods.,* 577 F.3d 625, 633 (6th Cir.2009). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.,* 408 F.3d 803, 807 (6th Cir.2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.,* 632 F.2d 21, 23 (6th Cir.1980)).[16]

## B. Additional Parties

 Plaintiffs request that the following individuals be named as plaintiffs in this action: Thomas R. Warren, Jr., Jeffrey G. See, Shelia D. Booe, Harold P. Sloves, and Felicitas K. Sloves. Plaintiffs represent that TVA contractors have visited the property of each of these individuals, informing them that TVA would be cutting down trees on their properties [Doc. 84]. TVA does not oppose the joinder of these five individuals [Doc. 87]. Therefore, the Court will grant plaintiffs' motion to amend the complaint in this respect.

## C. Additional Facts and Claims

On April 3, 2012, plaintiffs Donna Sherwood and Jerome Pinn filed this action seeking to prevent TVA from cutting trees on a government-owned transmission line right-of-way across their land. Their verified complaint alleged that TVA's planned cutting of trees on their properties exceeded the government's easement rights and asserted legal theories of conversion (Count I), breach of easement (Count II), trespass (Count III), and private nuisance (Count IV) [Doc. 1].

On May 2, 2012, plaintiffs filed an amended complaint [Doc. 8]. The amended complaint added three plaintiffs (for a total of five plaintiffs) and asserted additional legal theories: Count I asserted that TVA's planned cutting "exceeds the scope and purpose of the easement, violates the plaintiffs' rights, and would constitute a trespass, a private nuisance, conversion of property, and a taking of property without compensation"; Count II asserted a failure to comply with NEPA; Count III asserted that TVA failed to engage in allegedly required rulemaking under the APA; Count IV asserted that TVA's plan is subject to judicial review under the APA; and Count V set forth a claim to certify the case as a class action [*Id.*].

On June 12, 2012, plaintiffs filed a second amended complaint, adding six plaintiffs (for a total of eleven plaintiffs)[17] and asserting the same operative counts as the amended complaint [Doc. 62]. In response to the second amended complaint, TVA filed the Motion to Dismiss Counts I, III, and IV [Doc. 66], which the Court has ruled upon herein. Pursuant to that ruling, only Counts II and V remain.

---

**16.** The Court refers to the standard of review applicable to motions to dismiss, set forth, *infra,* Section III.A.

**17.** Subsequently, the parties stipulated, pursuant to Rule 41 of the Federal Rules of Civil Procedure, that Randall E. Nichols and Laura L. Nichols were to be dismissed without prejudice [Doc. 144].

The Court observes that plaintiffs' proposed third amended complaint would maintain the first four counts of the second amended complaint and add the following six proposed counts: proposed Count V would assert that TVA violated 5 U.S.C. § 552(a)(1)(D) by failing to publish its alleged new policy in the Federal Register; proposed Count VI would assert that TVA is equitably estopped from exercising the government's easement rights to clear its rights-of-way and keep them clear of trees and brush because TVA allegedly has allowed or "represented to property owners that they could have and maintain trees that exceed 15 feet in height on their property if the trees did not endanger the transmission lines or if the property owners kept the trees properly trimmed"; proposed Count VII would assert private nuisance; proposed Count VIII would assert public nuisance; proposed Count IX would assert violation of plaintiffs' substantive due process rights under the Fifth Amendment of the United States Constitution to use and enjoy their property; and proposed Count X would assert that TVA's alleged new policy is void for vagueness under the Fifth Amendment of the United States Constitution [Doc. 83–1].[18] TVA objects to the addition of each of these new counts on the ground of futility, asserting none of the counts would survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure [Doc. 87].

### 1. Proposed Count V (Failure to Publish in the Federal Register)

Proposed Count V would assert that TVA violated 5 U.S.C. § 552(a)(1)(D) by failing to publish its alleged new policy in the Federal Register. TVA asserts that its tree-cutting maintenance practices are not required to be published in the Federal Register and that the publication requirement is inapplicable where there is actual notice, as there was here; thus, TVA states, plaintiffs' claim is futile.

Under 5 U.S.C. § 552(a)(1), "[e]xcept to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published." Certain items must be published in the Federal Register pursuant to the statute:

(A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

(E) each amendment, revision, or repeal of the foregoing.

5 U.S.C. § 552(a)(1)(A)-(E). Other materials, however, shall only be made available for public inspection and copying:

(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

(B) those statements of policy and interpretations which have been adopted by

18. The proposed amended complaint omits the count seeking class certification [Doc. 84].

the agency and are not published in the Federal Register;

(C) administrative staff manuals and instructions to staff that affect a member of the public;

(D) copies of all records, regardless of form or format, which have been released to any person under paragraph (3) and which, because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; and

(E) a general index of the records referred to under subparagraph (D)[.]

5 U.S.C. § 552(a)(2)(A)-(E). TVA claims its right-of-way maintenance manual, or practices related thereto, falls within § 552(a)(2)(B) and (C). The Court, however, cannot determine at this point whether the alleged new policy falls within § 552(a)(2)(B) or (C) on the basis of the allegations of the complaint. *Cf. Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv.*, 78 F.3d 1360, 1368 (9th Cir.1995) (affirming summary judgment decision finding rate-setting guidelines for marinas that operated in national parks constituted staff manual rather than statement of substantive rules or policy).

■■■ Alternatively, TVA argues that even if the alleged new policy was required to be published, the requirement is subject to an exception for actual notice, which plaintiffs had through interactions with TVA employees, media coverage, and postings on TVA's website. To make out a claim under the statute, a plaintiff must demonstrate that he or she has been "adversely affected" by an unpublished policy that should have been published, and that the plaintiff did not have actual notice of the content of that policy. *See Alliance for Cannabis Therapeutics v. Drug Enforcement Admin.*, 15 F.3d 1131, 1136 (D.C.Cir.1994); *Fla. Dep't of Health & Rehabilitative Servs. v. Sullivan*, No. 88–

3462, 1991 WL 193532, at *4 n. 16 (D.D.C. May 31, 1991). While plaintiffs assert they did not have, and still do not have, notice of what trees are to be removed under the new policy, the proposed amended complaint contains allegations that support an inference that plaintiffs had actual knowledge of the new policy, including allegations that TVA employees visited certain plaintiffs' properties to discuss the new policy [Doc. 83–1 ¶¶ 13, 21]. Thus, plaintiffs' motion to amend the complaint to include proposed Count V will be denied.

### 2. Proposed Count VI (Equitable Estoppel)

■■■ Proposed Count VI would assert that TVA is equitably estopped from exercising the government's easement rights to clear the rights-of-way and keep them clear of trees and brush because TVA allegedly has "represented to property owners that they could have and maintain trees that exceed 15 feet in height on their property if the trees did not endanger the transmission lines or if the property owners kept the trees properly trimmed" [Doc. 83–1 ¶ 137]. TVA argues that the proposed amendment should be denied as futile because there is no allegation that a government officer, with the authority to do so, abandoned any of the government's easement rights to clear the rights-of-way and keep them clear of trees and brush.

As the Court previously found, the easements at issue in this suit afford TVA the right to clear the rights-of-way and keep them clear of trees and brush. *See, supra,* Section III.B. Congress has vested the Board of Directors of TVA with "the sole authority ... to dispose of property owned by the United States and operated by TVA." *United States ex rel. Tenn. Valley Auth. v. Caylor,* 159 F.Supp. 410, 413 (E.D.Tenn.1958). "Hence, the TVA Board

[is] the only authority that [can] dispose of, or abandon, the easement[s] that [are] the subject of this suit." *Id.* As there is no allegation that the TVA Board has done so, proposed Count VI is futile.[19] Moreover, plaintiffs have not alleged that TVA committed any affirmative misconduct in informing plaintiffs that that "they could have and maintain trees that exceed 15 feet in height on their property if the trees did not endanger the transmission lines or if the property owners kept the trees properly trimmed" [Doc. 83–1 ¶ 137]. *See Estate of James v. U.S. Dep't of Agric.,* 404 F.3d 989, 995 (6th Cir.2005) (noting that for government to be estopped based upon actions of a government agent, the agent must, at a minimum, have engaged in some affirmative misconduct, that is, conduct that either intentionally or recklessly misleads the claimant). Plaintiffs' motion to amend in this respect, therefore, will be denied.

### 3. Proposed Count VII (Private Nuisance)

Proposed Count VII would assert that TVA's new policy constitutes a private nuisance. TVA asserts that this proposed amendment should be denied because an easement owner cannot be held liable in private nuisance for the exercise of express easement rights. As this Court has previously noted, it agrees with this proposition. *See, supra,* Section III.B. Accordingly, plaintiff's motion to amend the complaint to include proposed Count VII will be denied.

### 4. Proposed Count VIII (Public Nuisance)

■ Proposed Count VIII would allege common-law public nuisance. TVA asserts that this proposed amendment should be

denied because its actions in acquiring and maintaining transmission line rights-of-way are activities authorized by the TVA Act. The Court agrees.

■ This Court has recognized that "courts will not hold conduct to constitute a nuisance where authority therefor exists by virtue of legislative enactment." *Smith v. Tenn. Valley Auth.,* 436 F.Supp. 151, 154 (E.D.Tenn.1977); *accord N.C. ex rel. Cooper v. Tenn. Valley Auth.,* 615 F.3d 291, 309–10 (4th Cir.2010) (operation of TVA power plants under permits required by Congress and the EPA cannot be deemed a public nuisance).[20] Here, the TVA Act authorizes TVA to acquire and construct transmission lines and distribute electric power, and affords TVA those powers that may be necessary or appropriate to exercise that right. *See* 16 U.S.C. §§ 831c(g)-(j), 831d(*l*); *see also* 16 U.S.C. § 831k, 831x. Thus, the conduct complained of in the complaint cannot constitute a public nuisance. *Accord id.* (holding that the construction of a hydroelectric generating facility could not constitute a nuisance because it was being constructed under legislative authority); *Morris v. Tenn. Valley Auth.,* 345 F.Supp. 321, 323 (N.D.Ala.1972) (dismissing challenge to TVA's discretionary utilization of the government's flowage easement rights in its operation of reservoir because the law authorized TVA's action). Accordingly, plaintiff's motion to amend the complaint to include proposed Count VIII will be denied.

### 5. Proposed Count IX (Denial of Due Process Under the Fifth Amendment)

■ Proposed Count IX would assert that TVA's new policy constitutes an

---

**19.** The Court declines to consider the documents referenced in support of plaintiffs' response to TVA's argument as they are matters outside of the proposed amended complaint.

**20.** While plaintiffs cite case law purporting to support their claim, the cited case law does not question this rule.

alleged violation of plaintiffs' substantive due process rights under the Fifth Amendment of the United States Constitution. TVA asserts that this claim is futile because any property rights belonging to plaintiffs are subordinate to the government's easement rights to clear the rights-of-way and keep them clear of trees and brush. The Court agrees with TVA. "To establish ... a substantive ... due process violation, the [plaintiff] must show that the [defendant] deprived it of a constitutionally protected ... property interest." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir.2002). While plaintiffs cite case law that establishes ownership of trees is a protected property interest, *see Halas v. City of Park Ridge*, No. 95–C–3191, 1996 WL 672252, at *4 (N.D.Ill. Oct. 18, 1996), the trees at issue fall within the scope of the government's easements, and the easements rights are superior to any property rights of plaintiffs. In *Prater*, the Sixth Circuit found that a city did not deprive a church of any property interest protected by the Due Process Clause when it decided to develop rather than close a dedicated roadway located between two lots owned by the church because any reversionary property interest the church had in the roadway was subject to the city's superior right to develop the roadway for a public purpose, which the city did. 289 F.3d at 431–32. The Court finds this reasoning applicable here. Accordingly, plaintiffs' motion to amend the complaint to include proposed Count IX will be denied.

### 6. Proposed Count X (Void for Vagueness Under the Fifth Amendment)

■ Proposed Count X would assert that TVA's new policy is void for vagueness under the Fifth Amendment of the United States Constitution. TVA asserts that the claim is futile because it would not survive a motion to dismiss. The Court agrees.

■ In considering a vagueness challenge that does not involve criminal conduct or First Amendment issues, as here, "the court must be fairly lenient in evaluating a claim for vagueness" and the determination of "[w]hether a statute is unconstitutionally vague must be assessed in the context of the particular conduct to which it is being applied." [21] *Doe v. Staples*, 706 F.2d 985, 988 (6th Cir.1983) (citations omitted). "[T]o constitute a deprivation of due process, it must be so vague and indefinite as really to be no rule or standard at all." *Id.* (alteration in original) (quoting *Exxon Corp. v. Busbee*, 644 F.2d 1030, 1033 (5th Cir.1981)) (internal quotation marks omitted). In other words, "it must be substantially incomprehensible." *Id.* (quoting *Busbee*, 644 F.2d at 1033).

While plaintiffs claim the Court must take as true the "allegations" in the complaint that the new policy is "vague regarding what, if any, trees property owners may have within TVA's transmission line easements that run on their properties[,]" that "Plaintiffs and persons of common intelligence must necessarily guess at the policy's meaning and can reasonably differ on its application[,]" that the new policy does not provide "sufficiently clear and explicit standards as to what, if any, trees TVA will allow property owners to have[,]" that "a person of ordinary intelligence cannot readily identify the applicable standard of which trees are allowed and which trees are not allowed by TVA[,]" and that the new policy fails "to

---

**21.** The Court notes that the allegedly new policy neither prohibits nor requires any conduct by plaintiffs. Nevertheless, the Court analyzes plaintiffs' proposed claim under the law applicable to vagueness claims.

provide persons of ordinary intelligence fair notice of what is prohibited," [*see* Doc. 83–1 ¶¶ 192, 193, 194, 197], the Court need not do so because these "allegations" are legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Jones v. Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). The Court finds, to the contrary, that the new policy as alleged in the complaint—that is, that TVA will clear any tree on its rights-of-way that are fifteen feet or taller or that might grow more than fifteen feet [*see, e.g.*, Doc. 83–1 ¶¶ 10, 11, 12, 13]—is neither "substantially incomprehensible" nor "so indefinite that 'men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Id.* (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)).[22] Accordingly, plaintiffs' motion to amend the complaint to include proposed Count X will be denied.

## V. Conclusion

For the reasons explained above, the Court hereby:

1. **DENIES** defendant's Motion to Dismiss Count I of the Second Amended Complaint for Lack of Subject Matter Jurisdiction [Doc. 132].

2. **GRANTS** defendant's Motion to Dismiss Counts I, III, and IV of the Second Amended Complaint [Doc. 65]. Counts I, III, and IV are hereby **DISMISSED** from this action.

3. **DENIES** Plaintiffs' Motion to Certify Question of State Law to the Tennessee Supreme Court [Doc. 81].

22. Because the Court finds this argument persuasive, it declines to address TVA's other argument, that the claim is futile because

4. **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Leave to File Third Amended Complaint and to Join Additional Plaintiffs [Doc. 83]. Plaintiff shall file an amended complaint consistent with the holdings of this order within ten (10) days of entry of this order.

IT IS SO ORDERED.

plaintiffs cannot establish the deprivation of a constitutionally protected property interest.